# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

17-2395

## UNITED STATES OF AMERICA,

Appellee,

v.

## MICHAEL BORDMAN,

Appellant.

*APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE*
*NORTHERN DISTRICT OF IOWA*
*HONORABLE JUDGE LINDA R. READE*

## APPELLANT'S BRIEF

**Heather Quick**
*FEDERAL PUBLIC DEFENDER'S OFFICE*
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
PHONE: (319) 363-9540
FAX: (319) 363-9542

ATTORNEY FOR APPELLANT

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

Michael Bordman (hereinafter "Bordman") was sentenced to 600 months of imprisonment, to be followed by a 25-year term of supervised release after pleading guilty to sexual exploitation of a child and possession of child pornography. At sentencing, Bordman requested a downward variance. He also challenged two special conditions of supervised release as overbroad and vague. One condition prohibited possession of pornographic materials or entering a place where pornography or erotica could be viewed or obtained. Similarly, the second condition prohibited the operation or use of any electronic device to view or produce any form of pornography or erotica. The government sought restitution for Pia of $3000, reaching this amount by dividing her total loss amount by the number of defendants who had been ordered to pay restitution at the time of Bordman's sentencing. Bordman objected, asserting this equation failed to comply with *Paroline v. United States*, 134 S. Ct. 1710 (2014). The district court overruled all of the above objections and sentenced Bordman to 600 months of incarceration.

On appeal, Bordman asserts that the district court committed procedural error by relying on an unproven and clearly erroneous fact, and alternatively that his sentence is substantively unreasonable. He argues that the above special conditions are vague and overbroad. Finally, he asserts the district court erred in determining the amount of restitution. He requests 15 minutes for oral argument.

Appellate Case: 17-2395    Page: 2    Date Filed: 08/24/2017 Entry ID: 4572207

# TABLE OF CONTENTS

SUMMARY OF THE CASE................................................................ ii

TABLE OF AUTHORITIES ............................................................v

JURISDICTIONAL STATEMENT ...................................................... vii

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW ............................1

STATEMENT OF THE CASE ..........................................................2

SUMMARY OF THE ARGUMENT ....................................................9

ARGUMENT ..........................................................................10

    I.      THE DISTRICT COURT COMMITTED PROCEDURAL ERROR
          BY RELYING ON A FACT NOT PROVEN AT SENTENCING
          WHEN DETERMINING BORDMAN'S SENTENCE. ...................10

    II.     BORDMAN'S STATUTORY MAXIMUM SENTENCE OF 600
          MONTHS OF IMPRISONMENT IS SUBSTANTIVELY
          UNREASONABLE..........................................................15

    III.    THE DISTRICT COURT FAILED TO COMPLY WITH *PAROLINE*
          WHEN DETERMINING THE APPROPRIATE RESTITUTION
          AMOUNT. ...................................................................18

          A. This Circuit should reject the 1/n method, as it violates the U.S.
             Supreme Court's directives in *Paroline*.......................................20

          B. Even if sometimes appropriate, the use of the 1/n method was an
             abuse of discretion in Bordman's case...........................................24

          C. The failure to disaggregate the harm caused by the initial abuse from
             the harm caused by Bordman's later possession was an abuse of
             discretion ..................................................................26

Appellate Case: 17-2395    Page: 3    Date Filed: 08/24/2017 Entry ID: 4572207

IV.    THE SPECIAL CONDITIONS OF SUPERVISED RELEASE ON
       "PORNOGRAPHIC MATERIALS" AND "PORNOGRAPHY OR
       EROTICA" ARE VAGUE AND OVERBROAD. ...........................28

       A.  The special conditions are vague. ..................................29

       B.  The special conditions are overbroad. ...........................33

CONCLUSION ........................................................................................37

CERTIFICATE OF FILING AND SERVICE .......................................38

Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION ...........39

iv

# Table of Authorities

## Federal Cases

*Am. Booksellers Ass'n v. Hudnut*, 771 F.2d 323 (7th Cir. 1985) .......................... 34

*Gall v. United States*, 552 U.S. 38 (2007) ............................................. 10

*Hill v. Colo.*, 530 U.S. 703 (2000) ..................................................... 29

*Paroline v. United States*, 134 S. Ct. 1710 (2014) ...................... 18-19, 19, 20, 24

*Smith v. Goguen*, 415 U.S. 566 (1974) ................................................. 30

*United States v. Adkins*, 743 F.3d 176 (7th Cir. 2014) .......................... 29

*United States v. Bender*, 566 F.3d 748 (8th Cir. 2009) .......................... 36

*United States v. Cottrell*, 853 F.3d 459 (8th Cir. 2017) ........................ 10

*United States v. Craig*, 642 F. App'x 632 (8th Cir. 2016) ..................... 35

*United States v. Dautovic*, 763 F.3d 927 (8th Cir. 2014) ...................... 16

*United States v. Deatherage*, 682 F.3d 755 (8th Cir. 2012) ................... 28

*United States v. Demers*, 634 F.3d 982 (8th Cir. 2011) ......................... 33

*United States v. Dileo*, 58 F. Supp. 3d 239 (E.D.N.Y. 2014) ............... 25

*United States v. Dunn*, 777 F.3d 1171 (10th Cir. 2015) ........................ 26

*United States v. Evans*, 802 F.3d 942 (8th Cir. 2015) ..................... 18, 20

*United States v. Forde*, 664 F.3d 1219 (8th Cir. 2012) ......................... 28

*United States v. Frazier*, 651 F.3d 899 (8th Cir. 2011) ........................ 27

*United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015) ..................... 26, 27

*United States v. Gamble*, 2015 WL 4162924, at *2 n.1 (E.D. Tenn. 2015) ......... 23

*United States v. Green*, 691 F.3d 960 (8th Cir. 2012) .......................... 15

*United States v. Grimes*, 702 F.3d 460 (8th Cir. 2012) ..................... 10, 13

*United States v. Guagliardo*, 278 F.3d 868 (9th Cir. 2002) ................ 30, 32

*United States v. Jeffries*, 615 F.3d 909 (8th Cir. 2010) ........................ 15

*United States v. Kane*, 639 F.3d 1121 (8th Cir. 2011) .................... 11, 16, 17

*United States v. Kelly*, 625 F.3d 516 (8th Cir. 2010) .......................... 29

*United States v. Kelly*, 677 F.3d 373 (8th Cir. 2012) .......................... 28

Appellate Case: 17-2395    Page: 5    Date Filed: 08/24/2017 Entry ID: 4572207

*United States v. Knapp*, No. 16-3559, 2017 WL 2533390
(8th Cir. June 12, 2017) ....................................................... 20
*United States v. Lantz*, 443 F. App'x 135 (6th Cir. 2011) ............... 32, 35
*United States v. Loreng*, 956 F. Supp. 2d 213 (D.D.C. 2013) ........ 21, 23
*United States v. Loy*, 237 F.3d 251 (3d Cir. 2001) ......................... 30, 34
*United States v. MacInnis*, 607 F.3d 539 (8th Cir. 2010) ................. 11
*United States v. Manning*, 738 F.3d 937 (8th Cir. 2014) .................. 15
*United States v. Martinez*, 821 F.3d 984 (8th Cir. 2016) ................. 16
*United States v. Miller*, 557 F.3d 910 (8th Cir. 2009) .................... 15
*United States v. Miner*, 544 F.3d 930 (8th Cir. 2008) .................... 16
*United States v. Muhlenbruch*, 682 F.3d 1096 (8th Cir. 2012) ........... 36
*United States v. Phipps*, 319 F.3d 177 (5th Cir. 2003) ................... 30
*United States v. Pyles*, 862 F.3d 82 (D.C. Cir. 2017) .................... 13, 17
*United States v. Ristine*, 335 F.3d 692 (8th Cir. 2003) .................. 29
*United States v. Rogers*, 448 F.3d 1033 (8th Cir. 2006) .................. 18
*United States v. Rogers*, 758 F.3d 37 (1st Cir. 2014) .................... 26
*United States v. Sainz*, 827 F.3d 602 (7th Cir. 2016) .................... 21, 24
*United States v. Simons*, 614 F.3d 475 (8th Cir. 2010) ................... 30
*United States v. Stokes*, 750 F.3d 767 (8th Cir. 2014) ................... 10
*United States v. Thompson*, 653 F.3d 688 (8th Cir. 2011) ................ 30

**Federal Statutes**

18 U.S.C. § 3553(a) (2012) ........................................................ 17-18
18 U.S.C. § 3553(a)(1) (2012) .................................................... 17

**State Cases**

*State v. Bahl*, 193 P.3d 678 (Wash. 2008) ................................... 30

Appellate Case: 17-2395    Page: 6    Date Filed: 08/24/2017 Entry ID: 4572207

## JURISDICTIONAL STATEMENT

<u>The decision appealed</u>:   Bordman appeals from the judgment of conviction and sentence entered against him on June 13, 2017, in the Northern District of Iowa, on charges of sexual exploitation of a minor and possession of child pornography. Bordman was sentenced to 600 months of incarceration, to be followed by a twenty-five-year term of supervised release.   He appeals his sentence, certain special conditions of supervised release, and the restitution order.

<u>Jurisdiction of the court below</u>:   The United States District Court had jurisdiction over Bordman's federal criminal prosecution pursuant to 18 U.S.C. § 3231 (2012):   "The district courts of the United States shall have original jurisdiction...of all offenses against the laws of the United States."

<u>Jurisdiction of this court</u>:   This Court has jurisdiction of the appeal pursuant to 28 U.S.C. § 1291 (2012):   "The courts of appeals...shall have jurisdiction of appeals from all final decisions of the district courts of the United States...."

Bordman filed a timely notice of appeal on June 19, 2017, from the judgment formally entered on June 13, 2017. *See* Fed. R. App. P. 4(b)(1)(A)(i).

Appellate Case: 17-2395     Page: 7     Date Filed: 08/24/2017 Entry ID: 4572207

**STATEMENT OF THE ISSUE PRESENTED FOR REVIEW**

I.    **WHETHER THE DISTRICT COURT COMMITTED PROCEDURAL ERROR BY RELYING ON A FACT NOT PROVEN AT SENTENCING WHEN DETERMINING BORDMAN'S SENTENCE.**

    1.    *United States v. Cottrell*, 853 F.3d 459 (8th Cir. 2017)

    2.    *United States v. Kane*, 639 F.3d 1121 (8th Cir. 2011)

    3.    *United States v. Pyles*, 862 F.3d 82 (D.C. Cir. 2017)

II.    **BORDMAN'S STATUTORY MAXIMUM SENTENCE OF 600 MONTHS OF IMPRISONMENT IS SUBSTANTIVELY UNREASONABLE.**

    1.    *United States v. Martinez*, 821 F.3d 984 (8th Cir. 2016)

III.    **THE DISTRICT COURT FAILED TO COMPLY WITH *PAROLINE* WHEN DETERMINING THE APPROPRIATE RESTITUTION AMOUNT.**

    1.    *Paroline v. United States*, 134 S. Ct. 1710 (2014).

    2.    *United States v. Loreng*, 956 F. Supp. 2d 213 (D.D.C. 2013)

    3.    *United States v. Dunn*, 777 F.3d 1171 (10th Cir. 2015)

IV.    **THE SPECIAL CONDITIONS OF SUPERVISED RELEASE ON "PORNOGRAPHIC MATERIALS" AND "PORNOGRAPHY OR EROTICA" ARE VAGUE AND OVERBROAD.**

    1.    *United States v. Guagliardo*, 278 F.3d 868 (9th Cir.2002)

    2.    *United States v. Loy*, 237 F.3d 251 (3d Cir.2001)

1

## STATEMENT OF THE CASE

Nature of the Case:   This is a direct appeal by defendant, Michael Bordman,

following a guilty plea and sentence in the Northern District of Iowa on a charge of

sexual exploitation of a child and possession of child pornography.   Bordman

appeals his sentence, certain special conditions of supervised release, and the

restitution order.

Factual and Procedural Background:

The defendant, Michael Bordman, is twenty-three years old. (PSR p. 2).[1]   At

the age of four, he was sexually abused by his father. (PSR ¶ 50).   His father

admitted to sexually abusing Bordman and Bordman's sisters. (PSR ¶ 50).

Bordman's father admitted to engaging in oral and anal sex with Bordman. (PSR ¶

50).   A physical examination of Bordman found conditions present that were

consistent with anal sex. (PSR ¶ 50).   Bordman's parents also forced Bordman and

his sisters to engage in sexual contact with each other. (PSR ¶ 52).   Bordman's

father was convicted in Texas state court of three counts of aggravated sexual assault

---

[1] In this brief, the following abbreviations will be used:
"DCD" -- district court clerk's record, followed by docket entry and page number, where noted;
 "PSR" – second amended presentence report, followed by the page number of the originating document and paragraph number, where noted; and
"Sent. Tr." – Resentencing hearing transcript (02/02/2017), followed by page number.

Appellate Case: 17-2395     Page: 9     Date Filed: 08/24/2017 Entry ID: 4572207

and sentenced to 75 years in prison. (PSR ¶ 50). Bordman's mother was also convicted of aggravated sexual assault and sentenced to 25 years in prison. (PSR ¶ 50).

Due to the sexual abuse, Bordman was removed from his parental home. (PSR ¶ 52). He then bounced around from different foster homes, staying at between 15 to 20 different foster homes throughout his childhood. (PSR ¶ 52). Bordman never stayed at the same home for longer than a year, due to the high level of care he needed. (PSR ¶ 52). In-between foster homes, Bordman would stay at group homes or at residential treatment facilities. (PSR ¶ 52).

In 2012, when Bordman was 18 or 19 years old, he met Tawnee Pusateri on Facebook. (PSR ¶ 53). Bordman moved to Cedar Rapids, Iowa, to meet Tawnee. (PSR ¶ 53). He stayed in Cedar Rapids, and Bordman and Tawnee had a child. (PSR ¶ 53).

In July 2016, Google sent multiple cybertips to the National Center for Missing and Exploited Children ("NCMEC") regarding child pornography associated with Bordman's email account "michaelbordman1@gmail.com." (PSR ¶ 6). The first tip indicated that two images of child pornography were uploaded to an email on Bordman's account, but it was unclear whether the email was sent. (PSR ¶ 6). The second tip indicated that an image showing Bordman's penis pressed

Appellate Case: 17-2395     Page: 10     Date Filed: 08/24/2017 Entry ID: 4572207

against the mouth of "N," who was two-years old. (PSR ¶ 6). The tips indicated that Bordman's email account was associated with a Kyocera-C6745 cell phone. (PSR ¶ 6).

Based on this tip, law enforcement went to Bordman's residence on July 21, 2016. (PSR ¶ 7). Law enforcement found and seized the Kyocera cell phone. (PSR ¶ 7). Bordman admitted belonging to a group on the "Kik" messenger service where members posted child pornography. (PSR ¶ 7). He also admitted to taking the photograph described above and that it was his penis in the image. (PSR ¶ 7).

Law enforcement conducted a forensic examination of the Kyocera cell phone. (PSR ¶ 10). The examination revealed conversations between Bordman and other Kik users. (PSR ¶ 10). Bordman had distributed and received child pornography on Kik. (PSR ¶ 10). In conversations with other Kik users, the users would ask Bordman to sexually abuse N and/or take sexually explicit pictures of N and send them. At times, Bordman would comply with these requests. (PSR ¶ 11). This included images of Bordman spreading N's labia and also moving N's skin to expose her anus. (PSR ¶¶ 11, 12).

Bordman also had different child pornography on his Google account and his Dropbox account. (PSR ¶ 21). In total, Bordman possessed 47 images and 47 videos of known child pornography. (PSR ¶ 21A).

4

On December 22, 2016, Bordman was indicted in the Northern District of Iowa on a count of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) & (3), one count of distribution of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1), one count of receipt of child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) & (b)(1), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2). (DCD 2). Pursuant to a plea agreement, Bordman pled guilty to counts 1 and 4. (DCD 32). The plea agreement included a limited appeal waiver that barred challenging any alleged multiplicity or duplicity of counts charged in the indictment, any claim that the sentencing on Counts 1 and 4 constitutes double jeopardy, and any claim that a sentence of 30 to 50 years exceeded the maximum statutory penalty. (DCD 32).

A presentence investigation report (PSR) was created in preparation for resentencing. The PSR determined an advisory guidelines sentencing range of life imprisonment, based upon a total offense level of 43 and a category I criminal history. (PSR ¶ 71). However, because the statutorily authorized maximum sentence was 600 months, the guideline range became 600 months of imprisonment. (PSR ¶ 71). The PSR also recommended several special conditions of release. As relevant to this appeal, the PSR recommended two similar conditions of supervised release:

5

The defendant must not operate or use photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica. (PSR ¶ 80).

The defendant must not own or possess any pornographic materials. The defendant must not use any form of pornography or erotica nor enter any establishment where pornography or erotica can be obtained or viewed. (PSR ¶ 81).

Bordman objected to the two above special conditions of supervised release, arguing the conditions were vague and overbroad. (DCD 37).

The government also requested restitution on behalf of one of the victims. Specifically, the government requested restitution for "Pia" from the "Sweet Sugar" series. (DCD 51). The government requested $3,000 in restitution for Pia and asserted this amount complied with the factors under *Paroline v. United States*, 134 S. Ct. 1710 (2014). (DCD 51). The government asserted that Pia's total losses were $95,295.71. (DCD 51 p. 13). The government then proposed dividing the total loss amount by thirty three. Thirty three represented the number of defendants—including Bordman—who, by the time of Bordman's sentencing, had been ordered to pay restitution. (DCD 51 p. 13; Sent. Tr. p, 10).[2] This came out to $2,887.75, and the government rounded up to $3,000. (Sent. Tr. p. 10). The government acknowledged that this calculation does not require consideration of all

_____

[2] The number provided at sentencing differed from the number in the written request because an additional defendant was ordered to pay restitution in the interim.

6

of the factors in *Paroline*. (DCD 51 p. 13). The government also acknowledged it had no evidence that Bordman distributed the videos of Pia, and that Bordman was not involved in the initial production of the videos. (DCD 51 p. 14).

While Bordman did not contest that restitution should was appropriate, Bordman objected to the amount requested. (DCD 52). Bordman argued the government's formula did not comply with *Paroline*. (DCD 52).

The case proceeded to sentencing. At sentencing, the government presented evidence in an attempt to support the restitution request. The government introduced three exhibits. Government exhibit 1 consisted of materials submitted by the attorney for victims in the "Sweet Sugar" series—including the cost determination. (DCD 51, Ex. 1). Government exhibit 2 is excerpts from the Child Identification Report prepared by NCMEC. (DCD 51, Ex. 2). Government exhibit 3 is a chart prepared by the prosecutor that lists prior federal restitution awards for Pia and the respective amounts. (DCD 51, Ex. 3).

Case agent Josh Bell also testified. Bell testified that Bordman had three videos from the "Sweet Sugar" series. (Sent. Tr. p. 16). However, the first and third videos were identical. (Sent. Tr. p. 17). Pia was identified as a victim in these identical videos. (Sent. Tr. p. 19). Law enforcement was unable to identify the victim in the second video. (Sent. Tr. p. 19). Pia was not in the second video.

After hearing argument on the appropriate restitution amount, the district court granted the government's request for $3,000. (Sent. Tr. p. 24). The extent of the district court's ruling is as follows:

> The Court is ready to rule by a preponderance of the evidence, after considering the arguments made by counsel, and they have briefed the cases that we have. And it's difficult to call, but I believe, and I do find, that restitution in the amount of $3,000 to Pia is appropriate, and that will be an award that I make at time of imposition of sentence.

(Sent. Tr. p. 24).

The parties then presented argument regarding the contested special conditions of supervised release and the ultimate sentence. Bordman requested a downward variance to 15-20 years of imprisonment. (Sent. Tr. p. 25). The government requested a sentence of 600 months of imprisonment. (Sent. Tr. p. 30).

First, the court overruled the objections to the two special conditions of supervised release. (Sent. Tr. p. 31). The district court then rejected the request for a downward variance. In doing so, the Court stated:

> In terms of his own reported abuse as a child, I want to make sure that it's understood that there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record to make that assertion.

(Sent. Tr. p. 33). Ultimately, the court sentenced Bordman to 600 months of imprisonment, to be followed by twenty-five years of supervised release. Bordman now appeals.

8

## SUMMARY OF THE ARGUMENT

Bordman raises several challenges to his sentence. First, the district court committed procedural error by relying on an unproven and clearly erroneous fact, specifically, that there is no cause and effect relationship between being a victim of sexual abuse as a child and later committing sexual abuse. Alternatively, Bordman's sentence is substantively unreasonable.

Next, the district court abused its discretion by failing to follow *Paroline* when determining the proper restitution amount. The court employed the "1/n method," in which the restitution amount is determined by the total loss divided by the number of defendants ordered to pay restitution by the date of that specific defendant's sentencing. Instead of determining the harm caused by Bordman specifically, as *Paroline* requires, the district court simply used a mathematical formula, which *Paroline* discourages.

Finally, the court erred in imposing two special conditions of supervised release. The terms "pornographic material," "pornography," and "erotica" are overbroad and vague.

9

**ARGUMENT**

I.   **THE DISTRICT COURT COMMITTED PROCEDURAL ERROR BY RELYING ON A FACT NOT PROVEN AT SENTENCING WHEN DETERMINING BORDMAN'S SENTENCE.**

<u>Standard of Review:</u>

Bordman asserts that the district court committed procedural error by relying on an unproven fact and "selecting a sentence based on clearly erroneous facts." *Gall v. United States*, 552 U.S. 38, 51 (2007); *see also United States v. Cottrell*, 853 F.3d 459, 462 (8th Cir. 2017) (stating it is procedural error for the district court to rely on an unproven fact in sentencing). Because Bordman failed to object to the reliance on this fact, review is for plain error. *See United States v. Grimes,* 702 F.3d 460, 469-70 (8th Cir. 2012) (reviewing procedural sentencing error claim for plain error). "To establish plain error, [Bordman] must prove (1) there was error, (2) the error was plain, and (3) the error affected his substantial rights." *United States v. Stokes,* 750 F.3d 767, 771 (8th Cir. 2014) (internal quotation marks omitted). An error affects a defendant's substantial rights "in the sentencing context only if there is a reasonable probability that the defendant would have received a lighter sentence but for the error." *Id.*

10

Merits:

A sentencing court procedurally errs when it selects a sentence on the basis of clearly erroneous facts. *United States v. MacInnis,* 607 F.3d 539, 541 (8th Cir. 2010); *see United States v. Kane*, 639 F.3d 1121, 1131-33 (8th Cir. 2011) (finding that sentencing court commits procedural error when sentencing on the basis of unsupported determinations). The district court relied on unproven and clearly erroneous facts when rejecting Bordman's most significant mitigating factor, specifically the childhood sexual abuse he suffered.

As a child, Bordman suffered sexual abuse at the hands of his father, and potentially also his mother. His parents were convicted and sentenced to lengthy terms of incarceration in Texas state court. At sentencing, defense counsel argued that this history of sexual abuse should be considered a mitigating factor. The Court rejected this argument when refusing to downward vary, stating:

> In terms of his own reported abuse as a child, I want to make sure that it's understood that there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record to make that assertion.

(Sent. Tr. p. 33).

This statement is troubling, and clearly erroneous, for multiple reasons. First, the court refers to his abuse as Bordman's "own reported abuse as a child." (Sent. Tr. p. 33). However, the abuse was not part of the record simply because of a

11

"self-report."  The U.S. Probation Office confirmed through court documents that Bordman's parents were convicted of sexual abusing him and his sisters and that Bordman's father admitted to raping Bordman, both anally and orally. (PSR ¶ 50). The sexual abuse was substantiated by medical evidence. (PSR ¶ 50).  Therefore, Bordman did not simply "self-report" prior sexual abuse; his parents were convicted in a court of law, beyond a reasonable doubt, of sexual abuse. (PSR ¶ 50).  Any statement otherwise is clearly erroneous and a superficial treatment of Bordman's past abuse.

Second, the district court then stated that there is no cause and effect between being a victim of sexual abuse as a child and later committing sexual abuse. However, the government did not put on any evidence of this, and there is nothing in the record to support this assertion.  The record likely fails to establish that there is no known causal relationship because this is, quite simply, wrong.  Senior Circuit Judge Williams from the Court of Appeals for the District of Columbia recently explained the impact childhood sexual abuse can have on an individual:

> The relevance of childhood sexual abuse in child pornography sentencing is obvious. Such an experience seems sure to produce at a minimum deep moral confusion. Afraid, unable or unsure of how to resist, the child is put in a hopeless bind. His sense of self-worth and agency, his ability to hew to moral norms, are all eroded. See Kimberly A. Tyler, *Social and Emotional Outcomes of Childhood Sexual Abuse: A Review of Recent Research*, 7 Aggression & Violent Behavior 567, 568-78 (2002) (summarizing research on behavioral sequelae in child

12

sex abuse victims, finding increased suicide, substance abuse, gang involvement, PTSD, and other behavioral problems); see also Abdulaziz Al Odhayani et al., *Behavioural Consequences of Child Abuse*, 59 Canadian Family Physician 831, 831 (Aug. 2013) (similar); Am. College of Obstetricians & Gynecologists, *Adult Manifestations of Childhood Sexual Abuse*, Committee Op. No. 498, at 1-2 (Aug. 2011) (similar).

*United States v. Pyles*, 862 F.3d 82, 97 (D.C. Cir. 2017) (Williams, J., dissenting). Senior Judge Williams continued by noting that "[a]lthough the weight to be given to such personal history is up to the district court (subject to reasonableness review), it plainly represents a nonfrivolous mitigation argument calling for consideration. Without some sign of consideration, there would be no basis for thinking—other than blind faith—that the court really weighed the issues at stake." *Id.* (Williams, J., dissenting).

The error is plain, as a court's obligation to refrain from the use of speculative and unsupported facts and theories in determining a fair sentence is well established. *See, e.g.*, *Kane*, 639 F.3d at 1132-33. The error also affected Bordman's substantial rights, as there is a reasonable probability that defendant would have received a lighter sentence but for the procedural error. *Grimes,* 702 F.3d at 470.

Bordman's conduct is unquestionably damaging and deserving of serious punishment. However, if the district court had properly considered his conduct in the context of Bordman's past, without relying on unproven and incorrect theories

13

on the effects of childhood sexual abuse, there is a reasonable probability he would have received a lighter sentence.

With no criminal history, at twenty-three years old, Bordman received the statutory-maximum sentence of 600 months of imprisonment.   Combined with a twenty-five year term of supervised release, Bordman's sentence results in him being under the control of the Bureau of Prisons or the supervision of a federal probation office for the rest of his life.   Bordman received this de facto life sentence in his first interaction with the judicial system as an adult.   Instead of focusing on sex-offender treatment, something Bordman has never obtained, he will be incarcerated for the vast majority of his adult life.

Bordman's personal circumstances make clear that a lesser sentence is reasonably likely.   Bordman's life has lacked structure.   His parents were abusive, and then he bounced around from foster home to foster home until ending up in Cedar Rapids, Iowa, where the crimes were committed.   Bordman suffers from several mental health issues. (PSR ¶ 56).   He has been diagnosed with bipolar personality disorder, severe depression, and recurrent attachment disorder. (PSR ¶ 56).   Because his prior abuse, while not an excuse, is a significant mitigating factor that the district court failed to consider, there is a reasonable likelihood Bordman

14

will receive a lighter sentence without consideration of the unproven and clearly erroneous facts.

## II. BORDMAN'S STATUTORY MAXIMUM SENTENCE OF 600 MONTHS OF IMPRISONMENT IS SUBSTANTIVELY UNREASONABLE.

<u>Standard of Review</u>:   Bordman challenges his sentence as substantively unreasonable.   "A defendant need not object to preserve an attack on the length of the sentence imposed if he alleges only that the District Court erred in weighing the § 3553(a) factors." *United States v. Miller,* 557 F.3d 910, 916 (8th Cir. 2009).

Bordman's sentence is reviewed for reasonableness in light of the factors set forth in 18 U.S.C. § 3553(a) (2012). *United States v. Jeffries,* 615 F.3d 909, 910 (8th Cir. 2010).   This is the equivalent of an abuse of discretion review. *United States v. Green,* 691 F.3d 960, 966 (8th Cir. 2012) ("We review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard."); *accord United States v. Manning,* 738 F.3d 937, 947 (8th Cir. 2014).

"A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Miner,* 544 F.3d 930, 932 (8th Cir. 2008).

15

Merits:

Substantive reasonableness review is not a "hollow exercise." *Kane*, 639 F.3d at 1135; *see also United States v. Martinez,* 821 F.3d 984, 989-90 (8th Cir. 2016) (reversing sentence because district court erred in finding defendant was a career offender and alternative basis for sentence, specifically an upward variance, resulted in an unreasonable sentence); *United States v. Dautovic,* 763 F.3d 927, 934-35 (8th Cir. 2014) (finding 20-month sentence substantively unreasonable). Bordman's sentence is substantively unreasonable for multiple reasons. First, it illustrates a clear error of judgment in weighing the §3553(a) factors. Further, the district court gave weight to an improper factor—the unproven fact discussed in Section I. Finally, the court erred in refusing to properly consider the sexual abuse Bordman suffered as a child—as this factor was relevant to his sentencing.

The district court committed a clear error of judgment in weighing the sentencing factors. The court focused on the nature and circumstances of Bordman's offense. The court paid little to no attention to the mitigating factors in his case, as discussed in Section I. These factors, including his past sexual abuse, mental health issues, and lack of criminal history, support a lesser sentence.

Further, the district court's reliance on a clearly erroneous fact, detailed in Section I, also supports that the sentence is substantively unreasonable. "[I]n a case

16

such as this one, where the procedural sentencing error stems in large measure form clearly erroneous factual findings, a procedurally unreasonable sentence would appear to be, *ipso facto*, substantively unreasonable." *Kane*, 639 F.3d at 1136. Bordman's past as a victim of childhood sexual abuse was a strong mitigating factor, and the district court dismissed it based on unproven and clearly erroneous facts.

Even assuming for sake of argument that the district court was correct in stating there is no causation between prior abuse and becoming a victimizer, nothing in § 3553(a) states that the history and characteristics of a defendant are only to be considered if they have an influence on or can be tied to the underlying offense. The abuse Bordman suffered as a child was a required factor to consider, as it was relevant to the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1); *Pyles*, 862 F.3d at 97 ("Counsel properly couched his client's sexual abuse within the first § 3553(a) factor, which directs attention to the history and characteristics of the defendant."). The failure to fully consider his prior sexual abuse resulted in an abuse of discretion.

In short, the district court had an obligation to insure that its sentence was "not greater than necessary" to satisfy the familiar goals of sentencing. 18 U.S.C. § 3553(a) (2012). Given the mitigating factors present in this case, the district court's statutory-maximum sentence was substantively unreasonable. Considering the

17

district court's superficial treatment of mitigating factors when imposing the statutory maximum sentence, reverse and remand before a different district court judge is necessary. *United States v. Rogers,* 448 F.3d 1033, 1035 (8th Cir. 2006) (citing 28 U.S.C. § 2106) (reversing a sentence for substantive unreasonableness, and ordering for re-sentencing by a different judge to ensure a "just" sentence).

## III. THE DISTRICT COURT FAILED TO COMPLY WITH *PAROLINE* WHEN DETERMINING THE APPROPRIATE RESTITUTION AMOUNT.

Standard of Review:

"An award of restitution is reviewed for abuse of discretion, and district court interpretations of the Mandatory Victims Restitution Act (MVRA) are reviewed *de novo*." *United States v. Evans,* 802 F.3d 942, 850 (8th Cir. 2015) (internal quotation marks omitted).

Merits:

The district court abused its discretion in ordering Bordman to pay $3,000 in restitution. Bordman did not challenge below, and does not argue on appeal, that an award of restitution is inappropriate. Instead, Bordman asserts the amount ordered was an abuse of discretion because the district court misapplied *Paroline v. United States*, 134 S. Ct. 1710, 1727 (2014). The government failed to meet its burden in proving the amount of Pia's losses that resulted from Bordman's possession of two

18

identical videos. *Paroline*, 134 S. Ct. at 1719.

In *Paroline*, the Supreme Court determined the "proper causation inquiry for purposes of determining the entitlement to and amount of restitution . . . ." *Id.* at 1718. In child pornography cases, restitution is proper "only to the extent the defendant's offense proximately caused the victim's losses." *Id.* at 1722.

> In this special context, where it can be shown both that a defendant possessed a victim's images and that a victim has outstanding losses caused by the continuing traffic in those images but where it is impossible to trace a particular amount of those losses to the individual defendant by recourse to a more traditional causal inquiry, a court applying § 2259 should order restitution in an amount that comports with the defendant's relative role in the causal process that underlies the victim's general losses.

*Id.* at 1727. In cases where the defendant was a possessor, the "amount would not be severe . . . given the nature of the causal connection between the conduct of a possessor . . . and the entirety of the victim's general losses from the trade of her images, which are the product of the acts of thousands of offenders." *Id.*

Of course, the question then becomes how to determine the proper amount of restitution for each defendant. The Court listed several factors to consider when determining the proper amount of restitution:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom

19

will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 1728. The Court cautioned against converting these factors into a "rigid formula, especially if doing so would result in trivial restitution orders." *Id.* at 1728. Instead, the amount should reflect defendants "causal roles and their own circumstances so that more are made aware, through the concrete mechanism of restitution, of the impact of child-pornography possession on victims." *Id.* at 1729.

Since *Paroline*, this Circuit has infrequently analyzed restitution challenges in child pornography cases. However, in *Evans*, this Court made clear that district courts "should not treat the inquiry as a purely mathematical or mechanical exercise." *Evans,* 802 F.3d at 950 (internal quotation marks omitted). Generally, this Court has upheld restitution orders when district courts discuss as least some of the *Paroline* factors, noting that an analysis of all of the factors is not required. *See, e.g., United States v. Knapp*, 2017 WL 2533390 (8th Cir. 2017).

### A. This Circuit should reject the 1/n method, as it violates the U.S. Supreme Court's directives in *Paroline*.

Below, the district court did not discuss any of the *Paroline* factors. The court, evidently, adopted the government's proposed number, based on a formula

20

that did not require any consideration of Bordman's specific conduct. This was improper.

The approach applied below has been referred to, by other courts, as the 1/n method, "where n represents the number of defendants who have paid the victim restitution plus 1 (to count the defendant being sentenced)." *See, e.g., United States v. Sainz,* 827 F.3d 602, 605 (7th Cir. 2016). A defendant is then ordered to pay "1/n" of the appropriate loss amount. Courts that uphold the 1/n method simply state that majority of *Paroline* factors are difficult to quantify. *Id.* at 606-07.

Other courts have rejected this approach for a number of reasons. First, the number of defendants provided is not always correct. *United States v. Loreng,* 956 F. Supp. 2d 213, 220-21 (D.D.C. 2013) (refusing to accept the government's number, noting that it was inconsistent with the number provided by other prosecutors in different cases with the same victim and also the victim's representations on the number of defendants). For example, in this case, the prosecutor provided a list of defendants who had previously been ordered to pay restitution. (DCD 51, Ex. 3). The total number was 32. One of the cases listed on the spreadsheet is Ernest Cook, 16-00153, from the District of Maine, sentenced in March 2017. (DCD 51, Ex. 3). In Cook's case, the prosecutor only listed 12 defendants and missed multiple

21

defendants included in Government Exhibit 3. (Compare *United States v. Cook*, No.

16-cr-00153. D. Me., ECF Doc. 33-2[3] with DCD 51, Ex. 3).

The prosecutor in Cook stated that the case spreadsheet was "the product of

self-reports by prosecutors." *United States v. Cook*, No. 16-cr-00153. D. Me., ECF

Doc. 33-2 p. 9.   The prosecutor also acknowledged that

> the government only has access to federal data, and has no information
> about state or local prosecutions.   In addition, the federal case
> management system used by the government does not contain any
> victim information, so there is no available method to correspond
> prosecution records with victim records.   Additionally, prosecutors
> charge and plead cases in a variety of ways that may not capture which
> defendants actually possessed or distributed a victim's image.   In this
> regard, a victim's image may appear in an investigation but otherwise
> be unassociated with a defendant, criminal case, or conviction.

*United States v. Cook*, No. 16-cr-00153. D. Me., ECF Doc. 33-2 pp. 4-5.[4]

The point of this argument is not to accuse any prosecutor of misconduct or

deliberate falsehood; instead, it acknowledges that there is significant room for error

in this method and a defense attorney likely has no way to confirm a number's

accuracy.   To add further confusion in this case, the victim reported "more than 500

perpetrators" have been charged with crimes involving Pia's images. (DCD 51, Ex.

---

[3] Cook's spreadsheet was filed in March 2017, so obviously later defendants are not
included.   However, the spreadsheet fails to include other defendants ordered to pay
restitution pre-March 2017.

[4] For most of the cases in Government Exhibit 3, the undersigned was unable to
access the underlying information relied upon because the relevant documents are
sealed.

Appellate Case: 17-2395     Page: 29     Date Filed: 08/24/2017 Entry ID: 4572207

1, p. 36). Therefore, it is improper to use the prior number of defendants ordered to pay restitution as the sole factor for determining the proper restitution award.

Further, the 1/n method would result in a random award that does not take into account a defendant's conduct. *See Loreng*, 956 F. Supp. 2d at 223 (calling this approach "arbitrary"). As one district court noted,

> Consider Defendant A and Defendant B, both of whom possessed the identical ten pictures of a Victim and were equivalent in all respects except the date of sentencing. Assume that Victim's total losses are $1,000,000. Assume also that Defendant A is the 500th defendant sentenced for possessing victim's images and that Defendant B is the 1,000th defendant. Under [the 1/n method], the starting value for Defendant A would be $2000 while for Defendant B it would be $1,000.

*United States v. Gamble*, 2015 WL 4162924, at *2 n.1 (E.D. Tenn. 2015); *see also Loreng*, 956 F. Supp. 2d at 225 ("The formula hence varies hugely based on the point in time restitution is sought, awards arbitrarily more than total losses, and results in wildly different figures divorced from a defendant's culpability or his effect on the victim."). Under the 1/n method, a later defendant who distributed multiple images or videos of Pia would pay less in restitution than Bordman, who possessed two videos that are identical. Considering nine defendants were ordered to pay restitution to Pia in April 2017 alone, the number could be drastically different based solely on a district court's schedule. (DCD 51, Ex. 3).

23

Based on the above arguments, this Court should reject the use of the 1/n method to calculate restitution in child pornography cases. While, as many other courts have noted, the task of determining restitution is difficult under *Paroline*, *see United States v. DiLeo*, 58 R. Supp. 3d 239, 244-45 (E.D.N.Y 2014), this does not mean the government and district court can ignore the majority of the factors in favor of a purely mathematical formula, especially when *Paroline* explicitly condemned such an approach. *Paroline*, 134 S. Ct. at 1728.

**B. Even if sometimes appropriate, the use of the 1/n method was an abuse of discretion in Bordman's case.**

Courts that have applied the 1/n method acknowledge the problems with this method and note that it is likely not appropriate in every case. *Sainz,* 827 F.3d at 607. For example, in *Sainz*, the defendant was the 136th offender, making the equation 1/136 of the appropriate loss amount. *Id.* at 605. In upholding this equation, the Seventh Circuit acknowledged that "the 1/n method is not appropriate for all cases because the restitution amount depends so heavily on the number of offenders previously sentenced. When n is very small or very large, a more nuanced method may be required." *Id.* at 607; *see also DiLeo*, 58 F. Supp.3d at 248 ("The Court considers, however, that this quotient, if adopted whole hog would effectively nullify other *Paroline* factors."). Because the number in this case is relatively small

24

in the context of child-pornography prosecutions, the district court abused its discretion by relying solely on the 1/n equation.

Even if this formula could be considered an appropriate starting point, it does not make sense to then round up to $3,000 from $2,887.75, considering Bordman's conduct.   Bordman did not distribute any images or videos involving Pia.   He possessed two videos, which were identical. *Paroline*, 134 S. Ct. at 1725 (finding that the defendant's "contribution to the causal process underlying the victim's losses was very minor, both compared to the combined acts of all other relevant offenders, and in comparison to the contributors of other individual offenders, particularly distributors . . . and the initial producer of the child pornography"). Courts that have applied the 1/n method have rounded down, as a way to account for the number of future defendants, as *Paroline* advises. *DiLeo*, 58 F. Supp. 3d at 249 ("[B]eginning with the simple division quotient of $2277.42 and modifying it slightly to correct for additional offenders currently in, or soon to be in, the prosecution pipeline, and considering that this is an ordinary case in which the record establishes the defendant's total role in the trafficking of the victim's images was his possession of a single video containing those images, the Court will enter a restitution award in the amount of $2000.").

Appellate Case: 17-2395    Page: 32    Date Filed: 08/24/2017 Entry ID: 4572207

**C. The failure to disaggregate the harm caused by the initial abuse from the harm caused by Bordman's later possession was an abuse of discretion.**

The total loss amount put forward by the government, which was used when applying the 1/n method in Bordman's case, included harm caused by the initial abuse. The district court abused its discretion in ordering restitution because the government made no attempt to disaggregate the harm caused by Bordman's possession of the images from the original harm, specifically the original abuse of Pia. Several other circuits have held that this is required under *Paroline*. *See United States v. Galan,* 804 F.3d 1287, 1290-91 (9th Cir. 2015); *United States v. Dunn*, 777 F.3d 1171, 1181-82 (10th Cir. 2015); *United States v. Rogers,* 758 F.3d 37 (1st Cir. 2014); *see also Loreng*, 956 F. Supp. 2d. at 223 (noting that the government's approach was flawed because "it begins with the total amount of [the victim's] losses, instead of the portion of [the victim's] losses caused by continued viewing of the images"). As the Tenth Circuit has stated:

> [T]he clear rationale of *Paroline* is that a defendant should be held accountable for the measures of losses that *he individually* has caused. We think it inconsistent with "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct" to hold [the defendant] accountable for those harms initially caused by [the victim's] abuser.

*Dunn*, 777 F.3d at 1181 (reversing restitution award because the expert report did not disaggregate the harms cause by the initial abuser from the harm caused by the

26

possessor defendant).   The Ninth Circuit also noted the need for separation between the two harms:

> If an original abuser had stayed in his own clandestine and sick little world, a terrible trauma would have been inflicted upon the victim, and the abuser would have to atone for all the consequences of that wrongdoing.   When distribution of images is added, an original abuser (or another person) would commit and put in motion a whole different set of abuses.   Those who later participate in distribution or possession, especially at a more remote time, are part of a distribution crime, but not of the physical-abuse crime.

*Galan,* 804 F.3d at 1290.

Below, there was no attempt to disaggregate losses caused by the initial abuse from the harm caused by Bordman's possession.   While the expert report extensively discusses the harm caused by the knowledge that numerous other individuals will view Pia's sexual abuse, the government conceded its approach "does not distinguish between the losses Pia sustained as a result of the initial physical abuse and the losses that stem from the ongoing traffic in her images as a whole." (DCD 51, p. 13).

Therefore, this Court should vacate the restitution award.   This Court should remand and require that the government identify an award amount consistent with *Paroline*. *See United States v. Frazier,* 651 F.3d 899, 903 (8th Cir. 2011) ("The government bears the burden of proving the amount of restitution based on a preponderance of the evidence").

27

## IV. THE SPECIAL CONDITIONS OF SUPERVISED RELEASE ON "PORNOGRAPHIC MATERIALS" AND "PORNOGRAPHY OR EROTICA" ARE VAGUE AND OVERBROAD.

**Standard of Review:**

Typically, "[w]hen a defendant properly objects at sentencing, [this Court] review[s] special conditions for abuse of discretion." *United States v. Deatherage,* 682 F.3d 755, 758 (8th Cir. 2012). However, because this Court is "particularly reluctant to uphold sweeping restrictions on important constitutional rights," *de novo* review is applicable to Bordman's challenge. *United States v. Kelly,* 677 F.3d 373, 376 (8th Cir. 2012).

**Merits:**

A district court has authority to order discretionary conditions of supervised release that are "reasonably related" to any of the several familiar goals of criminal sentencing, if supported by the evidence. *United States v. Forde,* 664 F.3d 1219, 1222 (8th Cir. 2012); 18 U.S.C. §§ 3583(d)(1), 3553(a)(1), and 3553(a)(2)(B-D); *see also* USSG § 5D1.3. However, the law imposes a tailoring requirement: the discretionary conditions must work "no greater deprivation of liberty than is reasonably necessary" to deter criminal conduct, protect the public, and provide the defendant with needed care, treatment and training. 18 U.S.C. §§ 3583(d)(2) and 3553(a)(2)(B-D).

28

Below, the district court imposed two similar special conditions of supervised release:

> **Special Condition 2:** The defendant must not operate or use photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica.

> **Special Condition 3:** The defendant must not own or possess any pornographic materials. The defendant must not use any form of pornography or erotica nor enter any establishment where pornography or erotica can be obtained or viewed.

(DCD 54, p. 4). These special conditions clearly infringe on Bordman's First Amendment rights. *United States v. Kelly,* 625 F.3d 516, 521 (8th Cir. 2010); *United States v. Adkins,* 743 F.3d 176, 193-94 (7th Cir. 2014). Both special conditions violate 18 U.S.C. § 3583(d)(2) because they amount to a greater deprivation of liberty than is reasonably necessary to achieve their purposes. Specifically, the special conditions must be vacated because they are (1) vague and (2) overly broad.

## A. The special conditions are vague.

A governmental restriction can be impermissibly vague "if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado,* 530 U.S. 703, 732 (2000). A condition must also provide adequate notice as to what conduct is prohibited. *United States v. Ristine,* 335 F.3d 692, 695 (8th Cir. 2003). When a governmental prohibition "is capable of reaching expression sheltered by the First Amendment, the doctrine demands a greater degree of specificity than in

29

other contexts." *Smith v. Goguen,* 415 U.S. 566, 572 (1974). The two challenged

conditions are vague because the terms "pornographic material," pornography, and

erotica do not provide the required specificity.

> Courts, including this Circuit, have struggled to define pornography:

> [W]e have previously noted concerns with the uncertainty of what
> constitutes "pornography" because the term lacks a precise legal
> definition. *See* [*United States v. Simons,* 614 F.3d 475, 484 n.4 (8th Cir.
> 2010); [*United States v. Ristine,* 335 F.3d 692, 695 (8th Cir. 2003).
> Other courts have expressed similar concerns. *See, e.g.,* [*Farrell v.
> Burke,* 449 F.3d 470, 484–91 (2d Cir. 2006)]; *United States v.
> Guagliardo,* 278 F.3d 868, 872 (9th Cir.2002); *United States v. Loy,*
> 237 F.3d 251, 263–65 (3d Cir.2001). *But see United States v. Phipps,*
> 319 F.3d 177, 192–93 (5th Cir.2003) (upholding a condition against a
> vagueness challenge that prohibited the defendants from possessing
> "sexually oriented or sexually stimulating materials").

*United States v. Thompson,* 653 F.3d 688, 695 (8th Cir. 2011). Because of the

inability to define "pornography," courts have consistently found special conditions

of supervised release that ban possession or use of pornography vague. *Guagliardo*,

278 F.3d at 872; *Loy*, 237 F.3d at 263-65; *State v. Bahl,* 193 P.3d 678, 686 (Wash.

2008). Because pornography is subject to differing interpretations, these special

conditions fail to provide adequate notice as to what is prohibited. *Id.* Further, what

materials are considered "pornographic" is based on a subjective determination,

creating "a real danger that the prohibition on pornography may ultimately translate

to a prohibition on whatever the officer personally finds titillating." *Loy*, 237 F.3d at

Appellate Case: 17-2395    Page: 37    Date Filed: 08/24/2017 Entry ID: 4572207

258; *see also Farrell*, 449 F.3d at 486-87 ("[D]etermining whether material deserves the label of pornography is a subjective, standardless process, heavily influenced by the individual, social and cultural experience of the person making the determination.").

In prior challenges before this Circuit, special conditions of supervised release banning the possession of "pornography" have survived vagueness challenges because the condition includes a "modifier" that removes vagueness concerns. For example, in *Thompson*, a special condition barred possession of "pornography which includes any sexually explicit materials." 653 F.3d at 696. "Sexually explicit" referred to a term defined by statute. *Id.* Therefore, the prohibition was limited to materials that fell within a statutory definition and was not vague. *Id.*

Instead, in both special conditions 2 and 3, pornography is either the sole term or combined with the term "erotica," which suffers from the same vagueness issues as pornography. This Court has not defined the term "erotica." The dictionary defines "erotica" as "literary or artistic works having an erotic theme or quality." https://www.merriam-webster.com/dictionary /erotica. Something is "erotic" if it is "devoted to, or tending to arouse sexual love or desire." https://www.merriam-webster.com/dictionary/erotic. Like "pornography,"

31

"erotica" is vague and subject to a probation officer's own subjective ideas of what is "erotic."

Analyzing each special condition specifically, it is clear the conditions are vague. Special condition 2 prohibits using "photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica." Because the terms "pornography" and "erotica" are vague, it is unclear what this could prohibit. For example, arguably Bordman is in violation if he reads "Fifty Shades of Grey" on a Kindle or eReader device. One probation officer could determine Bordman was "producing" erotica if he records a cover of a Marvin Gaye song on a cell phone. Another might believe he is viewing erotica if he watches an advertisement for "male enhancement" products on his computer. *United States v. Lantz*, 443 F. App'x 135, 141 (6th Cir. 2011).

Special condition 3 prohibits possessing pornographic material, using any form of pornography or erotica, or entering an establishment where pornography or erotica can be obtained or viewed. Like with special condition 2, it is also unclear what this prohibits. Would a picture of Michelangelo's sculpture, David, be considered "pornographic material"? A probation officer has interpreted it to be so. *Guagliardo*, 278 F.3d at 872. Could Bordman not enter a record store that sells Marvin Gaye albums because this is "erotica"? Could he not go to Barnes and

Appellate Case: 17-2395     Page: 39     Date Filed: 08/24/2017 Entry ID: 4572207

Noble because they have an erotica section?   Further, the wording of the special condition is strange because it prohibits the "use" of pornography or erotica.   It is unclear what is considered "use."

Because the special conditions provide Bordman with no notice as to what conduct is prohibited and would encourage arbitrary and discriminatory enforcement, the conditions must be stricken as vague.

### B. The special conditions are overly broad.

A special condition of supervised release "is only constitutionally overbroad if its breadth is real and substantial in relation to its plainly legitimate sweep." *Thompson*, 653 F.3d at 695.   The two conditions are overly broad for the same reason: the terms "pornographic material," pornography, and erotica are overly broad.

The inclusion of the word pornography makes the conditions overbroad. This Circuit has previously rejected arguments that conditions of supervised release banning "pornography" are overbroad. *United States v. Demers,* 634 F.3d 982, 985 (8th Cir. 2011).   Appellant asserts that this case law should be overruled.

Special conditions of supervised release that ban possession of pornography or pornographic materials have a wide sweep:

Unlike instances of obscenity, we could easily set forth numerous examples of books and films containing sexually explicit material that

33

we could not absolutely say are (or are not) pornographic. One such example, as discussed below, might be Playboy, which features nudity but not sexual conduct. It is also difficult to gauge on which side of the line the film adaptations of Vladimir Nabokov's Lolita would fall, or if Edouard Manet's Le Dejeuner sur L'Herbe is pornographic (or even some of the Calvin Klein advertisements), and we certainly cannot know whether the pornography condition is restricted only to visual materials, or whether it encompasses pure text and sound recordings. In *Farrell v. Burke*, No. 97 CIV. 5708(DAB), available in 1998 WL 751695 (S.D.N.Y. Oct.28, 1998), the district court described a situation in which a parole condition prohibiting "pornography" was interpreted by a parole officer to apply equally to Playboy and to photographs of Michelangelo's David. Similarly, the Court of Appeals for the Seventh Circuit, examining the scope of a statutory definition of pornography, observed that it could encompass everything "from hard-core films to W.B. Yeats's poem 'Leda and the Swan.' " *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 327 (7th Cir.1985).

*Loy*, 237 F.3d at 264. Much mainstream art, advertisement, music, prose, and film could arguably be considered "pornography." Banning such a wide variety of materials would not support the familiar goals of sentencing.

Assuming this Court declines to overturn its precedent, the special conditions here are still overbroad because they prohibit use, possession, or entering an establishment that sells, erotica. As discussed above, "erotica" could include books, songs, or pictures that are not pornographic or even sexually stimulating in nature. Erotica could be love songs, a TV commercial, or popular non-fiction books.

Appellate Case: 17-2395     Page: 41     Date Filed: 08/24/2017 Entry ID: 4572207

Hypothesizing how each special condition could be enforced illustrates that these conditions are overbroad. Arguably, special condition 2 could ban the operation or use of any device that could display any kind of media. "Indeed, [Bordman] arguably could not possess even a television—which broadcasts sexual allusion in everything from afternoon soap operas through prime time 'drama'—or a radio—which subjects listeners to such things as annoyingly persistent advertisements for 'male enhancement' products." *Lantz*, 443 F. App'x at 141 (finding a similar restriction "so broad that it seems to have little to do with any of the sentencing factors").

In an unpublished opinion, this Court has previously upheld a prohibition on owning or possessing any type of camera, photographic device or equipment, without prior approval. *United States v. Craig*, 642 F. App'x 632, 636 (8th Cir. 2016). Bordman's condition goes much farther than the special condition in *Craig*. First, special condition 2 does not only ban "owning or possessing" certain devices, it prohibits the operation or use of such devices. *Adkins*, 743 F.3d at 194 (considering conditions more "all-encompassing because they prohibit viewing or listening to sexually stimulating material, not merely possessing it"). Further, Bordman's condition is not limited to a camera, but also a computer or "any electronic storage device." Finally, Bordman's condition is an absolute ban, while

35

the condition in *Craig* allowed possession of devices with prior approval. *United States v. Bender,* 566 F.3d 748, 753 (8th Cir. 2009) (noting that total bans are disfavored).

Special condition 3 could ban the possession of love songs or a copy of the latest Sears catalog.   It could be enforced to prohibit Bordman from entering any record store, book store, public library or even a grocery store. *Adkins*, 743 F.3d at 194 (reasoning that under similar ban a defendant "might not be able to ride the bus, enter a grocery store, watch television, open a magazine or a newspaper, read a classic like Romeo and Juliet, or even go out in public (given the ubiquity of advertisements that use potentially sexually oriented or sexually stimulating images to pique consumer interests).").   If a gas station sells "Maxim" magazine, Bordman will not be able to go inside.   The "primary" product of the store does not need to be pornography or erotica.[5]

Therefore, special conditions 2 and 3 must be struck down as overly broad.

---

[5] In *United States v. Mefford*, 682 F.3d 1096 (8th Cir. 2013), this Court rejected a challenge to a special condition that banned a defendant from "entering any location where pornography, erotica, or adult entertainment can be obtained or viewed." However, it does not appear that a challenge to the word "erotica" was raised.

Appellate Case: 17-2395    Page: 43    Date Filed: 08/24/2017 Entry ID: 4572207

## CONCLUSION

For the reasons stated in sections I and II, Bordman respectfully requests that this Court reverse and remand for resentencing. For the reasons stated in Section III, Bordman requests that this court vacate the restitution order and remand for resentencing. Finally, for the reasons stated in Section IV, Bordman requests that this Court vacate the two special conditions of supervised release.

Respectfully submitted,

*/s/ Heather Quick*
Heather Quick, Asst. Federal Defender
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
PHONE: (319) 363-9540
FAX: (319) 363-9542

Appellate Case: 17-2395    Page: 44    Date Filed: 08/24/2017 Entry ID: 4572207

# CERTIFICATE OF FILING AND SERVICE

I certify that on August 23, 2017, I electronically filed the foregoing brief and addendum with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.   Participants in the case who are registered CM/ECF users were served by the CM/ECF system.   The brief and addendum were scanned for viruses using Symantec Endpoint Protection 12.1.4013.4013.   I also certify that, after receipt of notice that the brief and addendum are filed, I will serve a paper copy of this brief on defendant-appellant by mailing him a copy at FCI Pekin, P.O. Box 5000, Pekin, IL 61555.   I further certify that, after receipt of notice that the brief and addendum are filed, I will transmit 10 paper copies of the brief and addendum to the Clerk of Court via Federal Express and 1 paper copy to the appellee via regular mail as noted below.

Respectfully submitted,

*/s/ Heather Quick*
Heather Quick, Asst. Federal Defender
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
PH: (319) 363-9540
FAX: (319) 363-9542

Copy to:
Mark Tremmel, AUSA
U.S. Attorney's Office
111 Seventh Avenue SE
Cedar Rapids, IA 52401

38

**Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION**

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7).   The brief uses a proportional space, 14 point New Times Roman font.   Based on a line count under Microsoft Word Version 14.0.7159.5000, the brief contains 809 lines and 8,369 words, excluding the table of contents, table of authorities, any addendum, and certificates of counsel.

Respectfully submitted,

*/s/ Heather Quick*
Heather Quick, Asst. Federal Defender
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
PHONE: (319) 363-9540
FAX: (319) 363-9542

Appellate Case: 17-2395     Page: 46     Date Filed: 08/24/2017 Entry ID: 4572207