No. 17-2395

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

vs.

MICHAEL BORDMAN,

Defendant-Appellant.

*Appeal from the United States District Court*
*For the Northern District of Iowa*
*Honorable Linda R. Reade, Judge*

## BRIEF OF APPELLEE

## REDACTED COPY

Mark Tremmel
Assistant United States Attorney
Northern District of Iowa
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa  52401
(319) 363-6333
(319) 363-1990 (fax)
Mark.Tremmel@usdoj.gov

## SUMMARY OF THE CASE

Defendant Michael Bordman appeals his sentence after he pled guilty to sexual exploitation of a child and possession of child pornography. He argues that the district court plainly erred in discussing his history of victimization and abused its discretion in imposing a sentence of 600 months' imprisonment. He contends that the court abused its discretion in awarding $3,000 to a child pornography victim whose videos he possessed. Finally, he argues that the court erred in imposing two conditions of supervised release related to defendant's use of pornography and erotica.

If oral argument is granted, 10 minutes would be sufficient.

Appellate Case: 17-2395    Page: 2    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

# TABLE OF CONTENTS

**Page**

SUMMARY OF THE CASE .......................................................................ii

TABLE OF CONTENTS ........................................................................ iii

TABLE OF AUTHORITIES.....................................................................v

JURISDICTIONAL STATEMENT ..........................................................1

STATEMENT OF THE ISSUES...............................................................1

STATEMENT OF THE CASE ...................................................................2

 Relevant Procedural History..........................................................2

 Rulings Presented for Review .........................................................5

 Statement of the Facts .....................................................................5

SUMMARY OF THE ARGUMENT ........................................................14

ARGUMENT ...........................................................................................15

I. The District Court Did Not Plainly Err in Discussing Defendant's History of Victimization, and It Did Not Abuse Its Discretion in Imposing a Guidelines Sentence of 600 Months' Imprisonment.................................................................15

  A. Standard of Review ...............................................................15

  B. The Court Did Not Plainly Err in Discussing Defendant's Victimization as a Child ...................................18

Appellate Case: 17-2395     Page: 3     Date Filed: 10/05/2017     Entry ID: 4586852     RESTRICTED

C.    The Court Considered the Factors Under 18 U.S.C. § 3553(a) and Imposed a Substantively Reasonable Sentence ................................................................... 25

II.    The District Court Did Not Abuse Its Discretion in Ordering Defendant to Pay $3,000 in Restitution to a Victim Depicted in Child Pornography Videos Defendant Possessed ..................... 31

    A.    Standard of Review ............................................... 31

    B.    The Court Did Not Abuse Its Discretion in Determining the Amount of Restitution for Defendant to Pay to the Victim Pia ........................................ 32

III.    The District Court Did Not Err in Imposing Conditions of Supervised Release Relating to Defendant's Use of Pornography and Erotica .............................................. 52

    A.    Standard of Review ............................................... 52

    B.    The Special Conditions Involving Pornography and Erotica Were Reasonably Related to the Factors Under 18 U.S.C. § 3553(a) .............................................. 53

CONCLUSION ................................................................. 57

CERTIFICATE OF FILING AND SERVICE ......................................... 58

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS ................................................................. 59

Appellate Case: 17-2395   Page: 4   Date Filed: 10/05/2017   Entry ID: 4586852 RESTRICTED

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page**

*Gall v. United States*, 552 U.S. 38 (2007) ....................................15-17, 30

*Paroline v. United States*, 134 S. Ct. 1710 (2014)
.................................................................1, 31-39, 41-43, 45, 48-51

*United States v. Adkins*, 557 F. App'x 637 (8th Cir. 2014)
(unpublished)................................................................................1, 22

*United States v. Allison*, 772 F.3d 554 (8th Cir. 2014)...........................31

*United States v. Beckmann*, 786 F.3d 672 (8th Cir. 2015) ............1, 47-51

*United States v. Cottrell*, 853 F.3d 459 (8th Cir. 2017) .........................16

*United States v. Crume*, 422 F.3d 728 (8th Cir. 2005) ......................52-53

*United States v. Deegan*, 605 F.3d 625 (8th Cir. 2010) .........................17

*United States v. Dileo*, 58 F. Supp. 3d 239 (E.D.N.Y. 2014)..............46-47

*United States v. Dunn*, 777 F.3d 1171 (10th Cir. 2015) ...............1, 42-43

*United States v. Evans*, 802 F.3d 942 (8th Cir. 2015) .................31, 49-51

*United States v. Farmer*, 647 F.3d 1175 (8th Cir. 2011) ........................17

*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009).........1, 17-18, 30

*United States v. Funke*, 846 F.3d 998 (8th Cir. 2017) .................31, 50-51

*United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015) ..........................43

*United States v. Gamble*, 709 F.3d 541 (6th Cir. 2013)..........................34

Appellate Case: 17-2395    Page: 5    Date Filed: 10/05/2017 Entry ID: 4586852
RESTRICTED

*United States v. Gamble*, No. 1:10-CR-137, 2015 WL 4162924
    (E.D. Tenn. 2015) (unpublished).........................................36-37, 46

*United States v. Goodale*, 738 F.3d 917 (8th Cir. 2013) ....................17-18

*United States v. Hayes*, 518 F.3d 989 (8th Cir. 2008)............................15

*United States v. Hill*, 552 F.3d 686 (8th Cir. 2009) ...............................16

*United States v. Hobbs*, 845 F.3d 365 (8th Cir. 2016) .......................52-53

*United States v. Jones*, 612 F.3d 1040 (8th Cir. 2010) ..........................15

*United States v. Keating*, 579 F.3d 891 (8th Cir. 2009)....................28, 41

*United States v. Kelly*, 625 F.3d 516 (8th Cir. 2010) .............................52

*United States v. Knapp*, --- F. App'x ----, No. 16-3559, 2017
    WL 2533390 (8th Cir. June 12, 2017) (unpublished) ..............50-51

*United States v. Linderman*, 587 F.3d 896 (8th Cir. 2009) ..............23-24

*United States v. Loreng*, 956 F. Supp. 2d 213 (D.D.C. 2013) ..... 36, 39, 41

*United States v. Maxwell*, 778 F.3d 719 (8th Cir. 2015)....................16-17

*United States v. McIntosh*, No. 4:14-CR-28, 2014 WL
    5422215 (E.D. Va. Oct. 22, 2014) (unpublished) ...........................46

*United States v. Mefford*, 711 F.3d 923 (8th Cir. 2013)..........................55

*United States v. Miles*, 499 F.3d 906 (8th Cir. 2007)..............................28

*United States v. Miltier*, No. 2:15-CR-151, 2016 WL 6821087
    (E.D. Va. Nov. 17, 2016) (unpublished) .................................1, 45-46

*United States v. Muhlenbruch*, 682 F.3d 1096 (8th Cir. 2012) .........53-56

*United States v. Peck*, 496 F.3d 885 (8th Cir. 2007) .......................... 17-18

*United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005) ....................... 23-24

*United States v. Pyles*, 862 F.3d 82 (D.C. Cir. 2017) ......................... 21-22

*United States v. Reynolds*, 626 F. App'x 610 (6th Cir. 2005)
(unpublished) ................................................................................ 46

*United States v. Reynolds*, No. 12-20843, 2014 WL 4187936
(E.D. Mich. Aug. 22, 2014) (unpublished) ..................................... 46

*United States v. Richart*, 662 F.3d 1037 (8th Cir. 2011) .................. 53-54

*United States v. Ristine*, 335 F.3d 692 (8th Cir. 2003) ..................... 55-56

*United States v. Ruelas-Mendez*, 556 F.3d 655 (8th Cir. 2009) .............. 30

*United States v. Sainz*, 827 F.3d 602 (7th Cir. 2016) ....................... 34-37

*United States v. Scales*, 735 F.3d 1048 (8th Cir. 2013) ........................... 17

*United States v. Schaefer*, 675 F.3d 1122 (8th Cir. 2012) ................ 53-54

*United States v. Schultz*, 845 F.3d 879 (8th Cir. 2017) ..................... 1, 55

*United States v. Springston*, 650 F.3d 1153 (8th Cir. 2011) ................. 54

*United States v. Stults*, 575 F.3d 834 (8th Cir. 2009) ............................. 30

*United States v. Webster*, 788 F.3d 891 (8th Cir. 2015) ......................... 16

*United States v. Wiedower*, 634 F.3d 490 (8th Cir. 2011) ...................... 56

*United States v. Williamson*, 782 F.3d 397 (8th Cir. 2015) ........... 1, 16-17

Appellate Case: 17-2395   Page: 7   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

**Statutes:**

18 U.S.C. § 2251 ................................................................2

18 U.S.C. § 2252 ................................................................2

18 U.S.C. § 2252A ..............................................................2

18 U.S.C. § 2259 ..............................................................50

18 U.S.C. § 3231 ................................................................1

18 U.S.C. § 3553 .............................. 15-16, 22, 24-26, 28-30, 41, 52-53, 56

18 U.S.C. § 3583 ..............................................................54

28 U.S.C. § 1291 ................................................................1

**Other Authorities:**

USSG §2G2.2 ....................................................................40

USSG Chapter 5, Part A .........................................................4

Appellate Case: 17-2395    Page: 8    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

# JURISDICTIONAL STATEMENT

The district court had jurisdiction pursuant to 18 U.S.C. § 3231.
On June 13, 2017, the court entered final judgment, and on June 19,
2017, defendant filed a timely notice of appeal. This Court has
jurisdiction over this criminal appeal pursuant to 28 U.S.C. § 1291.

# STATEMENT OF THE ISSUES

**I.** *Whether the District Court Plainly Erred in Discussing Defendant's History of Victimization or Abused Its Discretion in Imposing a Guidelines Sentence of 600 Months' Imprisonment?*

*United States v. Williamson*, 782 F.3d 397 (8th Cir. 2015)
*United States v. Adkins*, 557 F. App'x 637 (8th Cir. 2014)
    (unpublished)
*United States v. Feemster*, 572 F.3d 455 (8th Cir. 2009)

**II.** *Whether the District Court Abused Its Discretion in Ordering Defendant to Pay $3,000 in Restitution to a Victim Depicted in Child Pornography Videos Defendant Possessed?*

*Paroline v. United States*, 134 S. Ct. 1710 (2014)
*United States v. Dunn*, 777 F.3d 1171 (10th Cir. 2015)
*United States v. Miltier*, No. 2:15-CR-151, 2016 WL 6821087 (E.D.
    Va. Nov. 17, 2016) (unpublished)
*United States v. Beckmann*, 786 F.3d 672 (8th Cir. 2015)

**III.** *Whether the District Court Erred in Imposing Conditions of Supervised Release Relating to Defendant's Use of Pornography and Erotica?*

*United States v. Schultz*, 845 F.3d 879 (8th Cir. 2017)

Appellate Case: 17-2395   Page: 9   Date Filed: 10/05/2017   Entry ID: 4586852 RESTRICTED

# STATEMENT OF THE CASE

## Relevant Procedural History

In November 2016, defendant was charged in a six-count superseding indictment with sexual exploitation of a child under 18 U.S.C. §§ 2251(a) and 2251(e) (Count 1); distribution of child pornography under 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count 2); receipt of child pornography under 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1) (Count 3); and possession of child pornography involving a prepubescent minor or a minor who had not attained 12 years of age under 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2) (Counts 4-6). (DCD 1).[1] In December 2016, defendant pled guilty to sexual exploitation of a child (Count 1) and possession of child pornography involving a prepubescent minor or a minor who had not attained 12 years of age

---

[1] "DCD" refers to the district court docket in case number 16-CR-81-LRR, and each reference is followed by the docket entry number. "DB" refers to defendant's opening brief and is followed by the applicable page number. "EX" refers to government sentencing exhibits (at DCD 51) and is followed by the applicable exhibit number. "PSR" refers to the presentence investigation report (at DCD 39) and, unless otherwise noted, each reference is to a paragraph number in the report. "TR" refers to the transcript of the June 12, 2017 sentencing hearing and is followed by the applicable page number.

Appellate Case: 17-2395    Page: 10    Date Filed: 10/05/2017    Entry ID: 4586852  RESTRICTED

(Count 4). (DCD 31, 62). In January 2017, the district court accepted defendant's guilty plea. (DCD 34).

Defendant was sentenced by the Honorable United States District Court Judge Linda R. Reade on June 12, 2017. (DCD 53, 65). The court adopted the undisputed recommendations in the presentence investigation report (PSR) with respect to the following guidelines calculations: a base offense level of 32 (TR 6; PSR ¶ 27), a four-level upward adjustment for the offense involving a minor under age 12 (TR 6; PSR ¶ 28), a two-level upward adjustment for the offense involving the commission of a sexual act or sexual contact (TR 7; PSR ¶ 29), a two-level upward adjustment for defendant knowingly engaging in distribution of child pornography (TR 7; PSR ¶ 30), a four-level upward adjustment for material portraying sadistic or masochistic conduct (TR 7; PSR ¶ 31), a two-level upward adjustment for the relationship between defendant and the victim (TR 7; PSR ¶ 32), and a five-level upward adjustment for defendant's being a repeat and dangerous sex offender (TR 7; PSR ¶ 37), resulting in an offense level of 51 (TR 7; PSR ¶ 37). The court granted a three-level reduction for acceptance of responsibility, resulting in an offense level of 48 that was treated as a

Appellate Case: 17-2395    Page: 11    Date Filed: 10/05/2017    Entry ID: 4586852 RESTRICTED

total offense level of 43.  (TR 7-8; PSR ¶¶ 38-40; USSG Chapter 5, Part A, comment. (n.2)).  Based on this offense level and his Category I criminal history, defendant's advisory guidelines range was life imprisonment; due to the statutory maximum sentence, his guidelines range became 600 months' imprisonment.  (TR 8; PSR ¶ 71).  The court denied defendant's motion for a downward variance and sentenced defendant to 600 months' imprisonment.  (TR 33, 38).

The court ordered defendant to pay $3,000 in restitution to "Pia,"[2] a victim depicted in two videos defendant possessed.  (TR 24, 35).

The court overruled defendant's objections in imposing two conditions of supervised release:  (1) a condition prohibiting defendant's use of photographic equipment, a computer, or any electronic storage device to view or produce pornography or erotica (PSR ¶ 80); and (2) a condition prohibiting defendant from possessing pornography, using pornography or erotica, or entering any establishment where pornography or erotica can be obtained or viewed (PSR ¶ 81).  (TR 31-32, 39-40).

---

[2] "Pia" is a pseudonym for one victim in the "Sweet Sugar" child pornography series.  (EX 1 at 3; TR 19).

Appellate Case: 17-2395    Page: 12    Date Filed: 10/05/2017    Entry ID: 4586852   RESTRICTED

## Rulings Presented for Review

Defendant appeals his 600-month sentence, arguing that the district court plainly erred in discussing his history of victimization and abused its discretion in imposing a substantively unreasonable sentence. He contends that the court abused its discretion in awarding $3,000 in restitution to the victim Pia. Finally, he argues that the court erred in imposing two conditions of supervised release related to his use of pornography and erotica.

## Statement of the Facts

### A.    Defendant's Offense Conduct

In July 2016, Google submitted three cybertips to the National Center for Missing and Exploited Children (NCMEC) regarding child pornography images uploaded to defendant's account. (PSR ¶ 6). One image, uploaded on August 19, 2015, depicted defendant's penis pressed against the mouth of N., a female relative. (*Id.*). Defendant's Google account also included an image of defendant displaying his penis as the victim, sitting in a stroller, looked up at it. (PSR ¶ 21).

Defendant used a cell phone and the Kik Messenger service to send child pornography to others and to receive child pornography from

5

others. (PSR ¶ 10). On July 4, 2016, during communications with a man from Australia, defendant posted the same image he had uploaded in 2015 of his penis pressed against the victim's mouth. (PSR ¶ 11). At the other man's request, defendant said he would get the victim in the shower. (*Id.*) He then posted the following depictions:

1. An image of his fingers spreading the victim's vaginal area;

2. Another image of the victim's vaginal area;

3. A seven-second video of defendant's finger rubbing the victim's genital area and appearing to penetrate the labia; and

4. An eight-second video of his finger penetrating the victim's labia.

(*Id.*).

On July 5, 2016, during communications with the man from Australia, defendant posted the following depictions:

1. An image of his fingers pulling on the victim's skin to expose her anus;

2. Another image of his fingers pulling on the victim's skin to expose her anus; and

3. An image of the victim with her diaper removed and showing her genital area.

(PSR ¶ 13).

6

RESTRICTED

Defendant sent pornographic depictions of the victim to two other persons. (PSR ¶¶ 15, 19). One of these persons offered to send defendant a bestiality video. (PSR ¶ 19). After defendant sent this person four pornographic depictions he had produced of the victim, he asked for the bestiality video, stating, "I think I earned it." (*Id.*). When the other person asked for another video from defendant before he would send defendant this video, defendant responded, "So I sent you all that and I get nothing in return." *(Id.).*

Defendant told others about his sexual abuse of the victim. (PSR ¶¶ 15, 17, 20). Defendant also told the Australia man about a seven-year-old girl he wanted to have sex with (PSR ¶ 11), and he expressed interest in a nine-year-old girl (PSR ¶ 14).

Defendant belonged to a Kik group whose members posted child pornography. (PSR ¶ 7). Defendant sent child pornography to other Kik members (PSR ¶ 10) and to a man he knew personally (PSR ¶ 9).

Defendant stored child pornography in his Dropbox account, including depictions of adult males sexually penetrating toddlers and infants. (PSR ¶ 21). This account included ten folders labeled with variants of the word "young," four folders labeled "kids," and folders

Appellate Case: 17-2395    Page: 15    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

labeled "INCEST," "preteen," "little girls," and "little sluts." (*Id.*). The account also included numerous depictions of age-questionable and adult pornography. (*Id.*).

## B. *Defendant's History and Conduct Not Directly Related to This Offense*

Defendant's PSR included information on the sexual abuse of defendant by his father. (PSR ¶¶ 50-52). This included information from court documents (PSR ¶ 50), statements his father made during that investigation (*id.*), a nurse's examination (*id.*), and statements defendant made to the probation officer in this case (PSR ¶¶ 51-52).

The sources of information and the specific nature of defendant's mother's conduct were not as clear. The PSR stated that defendant's parents both were convicted of sexual abuse offenses and sentenced to prison. (PSR ¶ 50). It included the statement, "It is noted that his sisters were also reportedly sexually abused by their parents." (PSR ¶ 51). In addition, the PSR stated:

> As noted previously, the defendant's parents reportedly sexually abused the defendant and his sisters when the defendant was approximately 3 or 4 years old. With regard to the abuse, the defendant advised that his parents forced him and his sisters to engage in sexual contact with each other.

8

(PSR ¶ 52).

Defendant's Facebook and Kik Messenger conversations included four instances of aggressive and threatening behavior. (PSR ¶ 46).[3] First, in 2014, defendant threatened to have sexually explicit pictures of a female posted online; she told him the pictures were "technically child pornography." (PSR ¶ 46(A)).

Second, in 2015, defendant communicated with a female who asked defendant to "prove that the pussy pic is gone." (PSR ¶ 46(B)). Defendant told her he "saved the pic and screen shoted the convo," and he threatened to show her father. (*Id.*). He then sent this female the picture of her genital area. (*Id.*). The female told defendant she did not want her parents to know about their sexually explicit messages and to have her guardianship taken away. (*Id.*). Defendant later told her that he had communicated with her father's boss and had told him her father had naked pictures of her. (*Id.*). He also told her, "Actually I lied

_____

[3] In his PSR objections letter, defendant made a legal objection "to the inclusion of this information as it is not relevant to the offenses of conviction, nor was he charged with any criminal offenses as a result of this conduct." (DCD 37 at 1). However, defendant did not object to any of the facts in this paragraph, which outlined four instances of defendant's threatening behavior.

9

I haven't called but I'm ganna call the cops and send them to ur Dads work the cops will tell his boss the want to talk about child pornograph on his phone and they will deffinatly fire him." (*Id.*).

Third, in 2015, a female asked defendant to remove a sexually explicit picture of her from Facebook. (PSR ¶ 46(C)). Defendant sent a topless picture of this female to a family member of hers, stating, "I'm posting her nude every were since she wants to be a bitch and lie and use me." (*Id.*). The family member told defendant that the female was "not in a mental state to be able to give a real consent of giving you permission to post her photos," and she threatened to press charges. (*Id.*). Defendant responded, "I have a lot of facebooks so I can keep this up for aslong as you want." (*Id.*).

Fourth, in 2016, when a female did not respond to his Kik messages, defendant stated, "Fine ur pics are being posted." (PSR ¶ 46(D)).

### C. *Restitution Evidence Presented at Sentencing*

On June 3, 2017, an attorney representing three victims in the "Sweet Sugar" Internet child pornography series submitted a restitution request and supporting documents. (EX 1). At the sentencing hearing,

Appellate Case: 17-2395    Page: 18    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

three government exhibits related to this restitution request were admitted into evidence. (TR 9). Exhibit 1 contained the restitution request and supporting documents, including a victim impact statement by the victim Pia's mother and a report by psychologist Dr. Marsha Hedrick on her examination of Pia. (EX 1 at 12-15, 36-40). Exhibit 2 contained relevant pages from a NCMEC report, including information on three child pornography videos from this series that defendant possessed in his Dropbox account. (EX 2 at 6). Exhibit 3 contained information from the U.S. Department of Justice listing defendants previously ordered to pay restitution to each of the three victims. (EX 3).

Investigator Joshua Bell of the Cedar Rapids Police Department testified at the sentencing hearing. (TR 11-21). He testified that Exhibit 2 contained the filenames of three files from defendant's Dropbox account relating to the "Sweet Sugar" series. (TR 16). He testified that he had communicated with an investigator who identified Pia as the victim depicted in two of the videos. (TR 18-19). Pia was approximately four years old when the child pornography of her was produced. (EX 1 at 3, 36).

Investigator Bell testified that he had viewed the two videos depicting Pia. (TR 19-20). He testified that the videos were identical, that they were 9 minutes and 37 seconds long, and that the two videos were stored in different folders in defendant's Dropbox account. (TR 17-20). He testified that the filenames for these videos included a name that was a shortened form of Pia's real name. (TR 19). He described the video:

> It describes a female, a naked female, who I believe to be about the age of 4 to 5 years old, on her hands and knees. She's being penetrated with a white vibrator in her anus. This happens several times throughout the video. At one point, he requests that she spread her buttocks apart, to spread her anus, to stretch her anus. He then turns her over onto her back and has her hold up her legs and he rubs his penis against her vagina and inserts his penis into her anus. After this, he turns her back over and continues to penetrate her with the vibrator. At the very end of the video, it shows her squatting over a glass jar urinating in it.

(TR 20). Investigator Bell testified that, in comparison with other child pornography depictions he had observed, this video was more graphic. (*Id.*).[4] On cross-examination, he testified that defendant was not

---

[4] The government relied on Investigator Bell's testimony in lieu of offering this video as an exhibit. (DCD 51 at 14). It argued that the content of the video was an aggravating circumstance that the district court could consider in determining the appropriate amount of restitution. (*Id.*; TR 23-24).

Appellate Case: 17-2395    Page: 20    Date Filed: 10/05/2017    Entry ID: 4586852   RESTRICTED

depicted in this video and that he had no information that defendant was involved in producing the video. (TR 21).

Based on her interview and evaluation of Pia, Dr. Hedrick estimated that the costs to Pia, including therapy, related expenses, and a vocational assessment and counseling, would be $91,900. (EX 1 at 40). Pia's attorney estimated that her own costs incurred (excluding attorney fees) were $10,187.13. (*Id.* at 45). In a supplemental sentencing memorandum, the government added one-third of these costs (because the attorney represented three victims in the "Sweet Sugar" series) to Dr. Hedrick's estimate, resulting in a total of $95,295.71. (DCD 51 at 13). The government also noted that Exhibit 3 listed 31 other defendants who had been ordered to pay restitution to Pia or to all three victims. (*Id.*; EX 3).

At the sentencing hearing, the parties stipulated that an additional defendant had been ordered to pay restitution to Pia. (TR 9-10). The government then stated that, if one divided $95,295.71 by 33 (the 32 defendants who already had paid restitution plus this defendant), the resulting figure was $2,887.75. (TR 10). The government addressed other factors related to the restitution

13

determination, and it recommended that defendant be ordered to pay $3,000 in restitution to Pia.  (TR 22-24).

After considering the parties' arguments, the court ordered defendant to pay $3,000 in restitution to Pia.  (TR 24, 35).

## SUMMARY OF THE ARGUMENT

The district court did not plainly err in discussing defendant's victimization as a child, as its comments accurately reflected the record, and any alleged misstatements did not affect his sentence.  Further, given defendant's heinous offense conduct, the court did not abuse its discretion in imposing a 600-month guidelines sentence.

The court did not abuse its discretion in awarding $3,000 in restitution to a child pornography victim, where the egregious nature of the videos defendant possessed was an aggravating factor, and where the award was consistent with this Court's decisions in past cases.

Finally, the court did not err in imposing two conditions of supervised release related to defendant's use of pornography or erotica.

14

# ARGUMENT

## I. The District Court Did Not Plainly Err in Discussing Defendant's History of Victimization, and It Did Not Abuse Its Discretion in Imposing a Guidelines Sentence of 600 Months' Imprisonment

Defendant argues the district court plainly erred in discussing his history of victimization, and he contends that the court imposed a substantively unreasonable sentence. The court did not plainly err in discussing defendant's history, and any error did not affect his substantial rights. Based on the factors under 18 U.S.C. § 3553(a), the court imposed a substantively reasonable sentence.

### A. Standard of Review

This Court "'review[s] the imposition of sentences, whether inside or outside the Guidelines range, [under] a deferential abuse-of-discretion standard.'" *United States v. Jones*, 612 F.3d 1040, 1044 (8th Cir. 2010) (quoting *United States v. Hayes*, 518 F.3d 989, 995 (8th Cir. 2008)). It "'must first ensure that the district court committed no significant procedural error.'" *Id.* (quoting *Gall v. United States,* 552 U.S. 38, 51 (2007)).

Procedural error includes "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting

15

RESTRICTED

a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range."

*Id.* (quoting *Gall*, 552 U.S. at 51).

"If a defendant fails to object timely to a procedural sentencing error, the error is forfeited and may only be reviewed for plain error." *United States v. Hill*, 552 F.3d 686, 690 (8th Cir. 2009) (citations omitted).

> Under plain error review, the defendant must show: (1) an error; (2) that is plain; and (3) that affects substantial rights. Even if the defendant shows these three conditions are met, we may exercise [our] discretion to correct a forfeited error only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings.

*Id.* (citations and quotations omitted).

"'To demonstrate an effect on substantial rights, [a defendant] must show a reasonable probability that but for the error, he would have received a more favorable sentence.'" *United States v. Cottrell*, 853 F.3d 459, 463 (8th Cir. 2017) (quoting *United States v. Webster*, 788 F.3d 891, 892 (8th Cir. 2015)).

This Court will "'not sustain a procedural challenge to the district court's discussion of the 18 U.S.C. § 3553(a) sentencing factors by a defendant who did not object to the adequacy of the court's explanation

16

at sentencing.'" *United States v. Williamson*, 782 F.3d 397, 399 (8th Cir. 2015) (quoting *United States v. Maxwell*, 778 F.3d 719, 734 (8th Cir. 2015)).

In the absence of procedural error, this Court then considers "'the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard.'" *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc) (quoting *Gall*, 552 U.S. at 51).

> An abuse of discretion occurs when: (1) a court fails to consider a relevant factor that should have received significant weight; (2) a court gives significant weight to an improper or irrelevant factor; or (3) a court considers only the appropriate factors but in weighing them commits a clear error of judgment.

*United States v. Farmer*, 647 F.3d 1175, 1179 (8th Cir. 2011) (citation omitted).

Where "'a sentence imposed is within the advisory guideline range, [this Court] typically accord[s] it a presumption of reasonableness.'" *United States v. Scales*, 735 F.3d 1048, 1052 (8th Cir. 2013) (quoting *United States v. Deegan*, 605 F.3d 625, 634 (8th Cir. 2010)). "It is the defendant's burden to rebut the presumption and to show that the sentence should have been lower." *United States*

17

*v. Goodale*, 738 F.3d 917, 926 (8th Cir. 2013) (citing *United States v. Peck*, 496 F.3d 885, 891 (8th Cir. 2007)).

"[I]t will be the unusual case when we reverse a district court sentence—whether within, above, or below the applicable Guidelines range—as substantively unreasonable." *Feemster*, 572 F.3d at 464 (citation and quotation omitted).

## B. The Court Did Not Plainly Err in Discussing Defendant's Victimization as a Child

Defendant's procedural error argument is based on the following statement by the district court about the relationship between defendant's history and his sexual abuse of the victim in this case:

> In terms of his own reported abuse as a child, I want to make sure that it's understood that there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult, and there's nothing in this record to make that assertion.

(TR 33). Defendant argues, "This statement is troubling, and clearly erroneous, for multiple reasons." (DB 11). However, defendant did not object to this statement at sentencing, and review is for plain error.

Defendant offers two arguments why the court committed plain error in making this statement. Neither argument establishes error, let alone plain error.

18

1. ***The court's use of the word "reported" was an accurate reflection of the record and did not constitute plain error***

Defendant places great emphasis on the district court's use of the word "reported":

> First, the court refers to his abuse as Bordman's "own reported abuse as a child." (Sent. Tr. p. 33). However, the abuse was not part of the record simply because of a "self-report." The U.S. Probation Office confirmed through court documents that Bordman's parents were convicted of sexual abusing him and his sisters and that Bordman's father admitted to raping Bordman, both anally and orally. (PSR ¶ 50). The sexual abuse was substantiated by medical evidence. (PSR ¶ 50). Therefore, Bordman did not simply "self-report" prior sexual abuse; his parents were convicted in a court of law, beyond a reasonable doubt, of sexual abuse. (PSR ¶ 50). Any statement otherwise is clearly erroneous and a superficial treatment of Bordman's past abuse.

(DB 11-12).

First, the use of the word "reported" does not show that the court did not believe defendant was abused as a child. Defendant identifies nothing in the record to support interpreting the court's use of this word in this light. The court read the PSR (TR 4-5), including paragraphs 50 through 52, and it did not question the validity of the information in these paragraphs.

Second, even taken alone, the court's statement was accurate.

Appellate Case: 17-2395    Page: 27    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

The PSR included information from multiple sources on defendant's abuse by his father: court documents (PSR ¶ 50), statements his father made during that investigation (*id.*), a nurse's examination (*id.*), and statements defendant made to the probation officer in this case (PSR ¶¶ 51-52).

However, the record regarding defendant's mother was not as clear. The PSR stated that she was convicted of aggravated sexual assault and sentenced to prison (PSR ¶ 50), but it did not indicate that records showed who the mother's victims were. In paragraphs not referencing court records, the PSR stated that both parents "reportedly" sexually abused defendant and his sisters (PSR ¶¶ 51-52). The PSR stated, "Unless it is otherwise noted, the information in Part C of the presentence report was obtained from the defendant." (PSR ¶ 49).

Defendant's argument, that the "U.S. Probation Office confirmed through court documents that Bordman's parents were convicted of sexual abusing him and his sisters," is accurate regarding his father, but the reference to court documents is not accurate regarding his mother. In fact, defendant states that he "suffered sexual abuse at the hands of his father, and *potentially* also his mother." (DB 11 (emphasis

20

added)).  Given the different sources of information in paragraphs 50 through 52 of the PSR, including self-reported information regarding defendant's mother, the court did not err in using the term "reported."

Third, the court made a second statement about defendant's abuse that shows defendant's argument is without merit:

> He was victimized by his father as a child, and his parents went to prison for that criminal behavior.

(TR 36).  Even though the PSR's account of defendant's mother's offense was based on defendant's self-report, the court stated that she went to prison based on defendant's being victimized by his father.  The record does not support defendant's argument that "[t]he district court relied on unproven and clearly erroneous facts when rejecting Bordman's most significant mitigating factor . . . ."  (DB 11).

## 2. The court's statement about "no cause and effect relationship" was an accurate reflection of the record and did not constitute plain error

Defendant argued in the district court that his victimization as a child was a mitigating factor (DCD 43 at 4-5), and the court did not plainly err in addressing this argument.

Defendant cites a dissenting opinion that quotes articles on the behavior of child sexual abuse victims.  (DB 12-13 (quoting *United*

Appellate Case: 17-3395     Page: 29     Date Filed: 10/05/2017     Entry ID: 4586852     RESTRICTED

States v. Pyles, 862 F.3d 82, 97 (D.C. Cir. 2017) (Williams, J., dissenting))).  However, defendant presented no evidence at sentencing to support his argument, advanced in this appeal, that "[t]he record likely fails to establish that there is no known causal relationship because this is, quite simply, wrong."  (DB 12).

In *United States v. Adkins*, 557 F. App'x 637 (8th Cir. 2014) (unpublished), this Court addressed a similar argument in a case that involved expert testimony:

> Here, Adkins challenges the district court's factual conclusions that resulted in its rejection of the requested downward variance.  At sentencing, the court made some "general [factual] findings" before specifically evaluating the § 3553(a) factors.  Adkins challenges these findings; namely, (1) that there was no objective evidence that Adkins was sexually abused as a child; (2) that even if he was abused, there was no evidence demonstrating the cause and effect between child abuse and collecting and distributing child pornography; and (3) that Adkins's expert's testimony was unhelpful.  The district court reached these conclusions after fully examining and weighing the evidence.  After a thorough review of the record, and given that factual findings and credibility determinations are best left to the sentencing court, we see no error here.

*Id.* at 638 (citations and footnote omitted).  In the present case, defendant presented no evidence to support a "cause and effect" relationship between his victimization and his offense conduct.

22

In the same sentence as the court's phrase that "there is no cause and effect relationship between being a victim of child abuse and victimizing children as an adult," the court immediately followed up with the phrase "and there's nothing in the record to make that assertion." (TR 33). As the court correctly noted, there was nothing in the record to support an assertion of such a causal relationship.

Further, even if one assumed (without evidence) that defendant's victimization contributed to his sexual interest in children, he still made the conscious decisions (1) to molest the victim, (2) to produce child pornography, and (3) to distribute sexually explicit images and videos of her. The court's "cause and effect" statement did not involve the psychological effects of sexual abuse; rather, it referenced the act of "victimizing children as an adult." Defendant's own victimization did not deprive him of his free will, and he repeatedly exercised his free will to exploit the victim in this case.

### 3. The court's discussion of defendant's victimization did not constitute plain error affecting his substantial rights

The court did not err in discussing defendant's victimization as a child, and any error was not plain. Further, defendant has not

Appellate Case: 17-2395    Page: 31    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

demonstrated that any error affected his substantial rights, because he has not shown "a reasonable probability, based on the appellate record as a whole, that but for the error he would have received a more favorable sentence." *United States v. Linderman*, 587 F.3d 896, 899 (8th Cir. 2009) (citing *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (quotations omitted)).

Defendant argues, "Because his prior abuse, while not an excuse, is a significant mitigating factor that the district court failed to consider, there is a reasonable likelihood Bordman will receive a lighter sentence without consideration of the unproven and clearly erroneous facts." (DB 14-15). The record does not support this argument.

First, not only did the court read the PSR (TR 4-5), but it also specifically referenced defendant's victimization: "He was victimized by his father as a child, and his parents went to prison for that criminal behavior." (TR 36). Defendant is simply incorrect in stating that this abuse "is a significant mitigating factor that the district court failed to consider."

Second, the court's discussion of defendant's victimization did not affect the guidelines calculation or its consideration of the factors under

24

18 U.S.C. § 3553(a).  Defendant's offense level of 48 became a total offense level of 43, resulting in a guidelines range of life imprisonment before the consideration of the statutory maximum of 50 years' imprisonment.  (TR 8).  The court stated that defendant's "offense conduct is so outrageous that he's well above the sentencing charts." (TR 33).

As set forth in section I(C), the court reached its sentence after considering the guidelines and other factors under 18 U.S.C. § 3553(a). Defendant's argument that the court should have weighed these factors differently does not establish a reasonable likelihood that he would have received a lighter sentence.  The court did not plainly err in discussing defendant's victimization, and its statement did not affect defendant's substantial rights.

## C.   *The Court Considered the Factors Under 18 U.S.C. § 3553(a) and Imposed a Substantively Reasonable Sentence*

In arguing that the court imposed a substantively unreasonable sentence, defendant reiterates the plain error argument addressed above, arguing that the court "gave weight to an improper factor."  (DB 16).  In addition, he claims "the district court committed a clear error of

25

judgment in weighing the sentencing factors" because it "paid little to no attention to the mitigating factors in his case. . . ." (*Id.*). Defendant contends that these factors, including "his past sexual abuse, mental health issues, and lack of criminal history, support a lesser sentence." (*Id.*). For the reasons outlined in section I(B) above, defendant's first argument is without merit.

Regarding defendant's second argument, he has identified nothing in the record to show the court made a clear error in judgment. The court considered all of the factors under § 3553(a), and defendant's guidelines sentence of 600 months' imprisonment was substantively reasonable.

After hearing arguments from both parties, the court stated:

> In terms of the request for a downward variance, the Court is aware that it has the power to vary downward after a careful consideration of all the factors at 18 United States Code Section 3553(a). The goal of sentencing is to arrive at the sentence that is sufficient but not greater than necessary to achieve the goals of sentencing.
>
> The Court did examine each and every factor under 3553(a) of Title 18 in evaluating the arguments made for a downward variance. I find no basis for a downward variance, and I decline the invitation to vary downward. I considered the oral arguments for a downward variance, as well as the written, and, of course, the government's resistance thereto, both here in court and in the written

Appellate Case: 17-2395   Page: 34   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

materials.

(TR 32).

The court addressed defendant's argument that he had no

criminal history:

> The fact that he has no—I'm just going to talk about a few of
> the arguments made. Yes, he has no criminal history. That
> is very typical of individuals who offend against children.
> It's very unusual, in my history on this court, to find a
> person who has committed the offenses that Mr. Bordman
> has who has any criminal history or any of significance.
> And, of course, the lack of a criminal history has been taken
> into account under the advisory guidelines. He scores
> criminal history category I. It's just that his offense conduct
> is so outrageous that he's well above the sentencing charts,
> and the only saving salvation for him is the cap on the
> statutory provisions.

(TR 32-33).

Defendant argued that, "rather than a prison sentence of 50 years,

which is what is recommended by the guidelines," he needed "intensive

sex offender treatment." (TR 26). The court addressed this argument:

> Intensive sex offender treatment may be appropriate. I don't
> know what the current statistics are on sex offender
> treatment. Not always successful, but certainly he'll be
> given that opportunity to change his behavior, but it is not a
> substitute for incarceration in this case because he is a
> danger to the community and is at extreme high risk to
> recidivate in the Court's mind.

(TR 33).

27

Defendant argues that "the court erred in refusing to properly consider the sexual abuse Bordman suffered as a child . . . ." (DB 16). However, the court specifically stated:

> He was victimized by his father as a child, and his parents went to prison for that criminal behavior.

(TR 36). The court then addressed defendant's argument about his mental health issues and other aspects of defendant's history:

> He reports foster care placements and group home placements throughout his childhood. He reports a typical relationship with his sisters. Although he reports suffering from some physical problems, he's not been on any medications since being incarcerated. He reports a prior mental health diagnosis, and that has not been substantiated, but, of course, during the time he's in prison and while he's on supervised release, that should be explored, and the Court will provide for that. He self-reports using marijuana, he says once every couple months when he's stressed out. Last use reportedly occurred at age 22. He's 23 now. He did graduate from high school in May of 2012. Minimal employment history.

(*Id.*).

This Court has "held that where the district court heard argument from counsel about specific § 3553(a) factors, [it] may presume that the court considered those factors." *United States v. Keating*, 579 F.3d 891, 893 (8th Cir. 2009) (citing *United States v. Miles*, 499 F.3d 906, 909 (8th Cir. 2007)).

Appellate Case: 17-2395    Page: 36    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

Defendant argues that, "[g]iven the mitigating factors present in this case, the district court's statutory-maximum sentence was substantively unreasonable." (DB 17). The court did consider defendant's arguments on mitigating factors, but it properly gave weight to the significant aggravating factors—particularly defendant's "outrageous" conduct. (TR 33).

Defendant's conduct as an adult shows his willingness to repeatedly victimize others in order to gratify himself. Defendant demonstrated his sexual interest in children by possessing and distributing prepubescent child pornography. (PSR ¶¶ 8-10, 21). He went even further with his decision to molest the victim, with the first recorded instance occurring in or before August 2015, and further abuse occurring in July 2016—almost a year after defendant uploaded the initial image. (PSR ¶¶ 6-7, 11, 13).

Defendant's repeated decision to offend against the victim and his threatening conduct toward others are strong evidence of what the court determined was his "extreme high risk to recidivate." (TR 33). In this case, a guidelines sentence was necessary to "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2).

Appellate Case: 17-2395   Page: 37   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

"Where the district court in imposing a sentence makes 'an individualized assessment based on the facts presented,' addressing the defendant's proffered information in its consideration of the § 3553(a) factors, such sentence is not unreasonable." *United States v. Stults*, 575 F.3d 834, 849 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 50). That is precisely what the court did here.

> The district court's decision to place greater emphasis in this case on factors that favored a sentence within the advisory range, such as the need to deter criminal conduct, to protect the public, and to avoid unwarranted sentence disparities, than on other § 3553(a) factors that might favor a more lenient sentence is a permissible exercise of the considerable discretion available to a sentencing court under the post-*Booker* regime.

*United States v. Ruelas-Mendez*, 556 F.3d 655, 658 (8th Cir. 2009). The court had "substantial latitude to determine how much weight to give the various factors under § 3553(a)," *id.* at 657, and defendant's disagreement with the court's decision does not show an abuse of discretion.

This is not "the unusual case when [this Court] reverse[s] a district court sentence . . . as substantively unreasonable." *Feemster*, 572 F.3d at 464 (citation and quotation omitted). Defendant has failed

Appellate Case: 17-2395   Page: 38   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

to meet his burden to show the district court abused its discretion, and defendant's sentence was reasonable.

## II. *The District Court Did Not Abuse Its Discretion in Ordering Defendant to Pay $3,000 in Restitution to a Victim Depicted in Child Pornography Videos Defendant Possessed*

Defendant contends that the court abused its discretion in ordering him to pay $3,000 to the victim Pia. (DB 18) He does not argue that he should not have been required to pay restitution to Pia; rather, he argues that the court misapplied *Paroline v. United States*, 134 S. Ct. 1710 (2014), in determining the appropriate amount of restitution. The court properly applied *Paroline*, and it did not abuse its discretion in determining the amount of restitution.

### A. *Standard of Review*

"'An award of restitution is reviewed for abuse of discretion, and district court interpretations of the Mandatory Victims Restitution Act (MVRA) are reviewed de novo.'" *United States v. Funke*, 846 F.3d 998, 1000 (8th Cir. 2017) (quoting *United States v. Evans*, 802 F.3d 942, 950 (8th Cir. 2015), in turn quoting *United States v. Allison*, 772 F.3d 554, 556 (8th Cir. 2014)).

31

**B. The Court Did Not Abuse Its Discretion in Determining the Amount of Restitution for Defendant to Pay to the Victim Pia**

In *Paroline*, the Supreme Court concluded that a defendant who possesses depictions of child pornography should be required to pay part of the victim's "general losses" that "stem from the ongoing traffic in her images as a whole." 134 S. Ct. at 1722. "This cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment." *Id.* at 1728. Courts may begin their calculations by determining "the amount of the victim's losses caused by the continuing traffic in the victim's images (excluding, of course, any remote losses . . .)." *Id.* Courts may then consider a variety of factors, including:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* The Court also stated:

32

Based on its experience in prior cases of this kind, the Government—which, as noted above, see *supra*, at 1718-1719, bears the burden of proving the amount of the victim's losses, § 3664(e)—could also inform district courts of restitution sought and ordered in other cases.

*Id.* at 1729.

Included in the Court's discussion of "general losses" is a parenthetical relevant to defendant's argument in this appeal:

It is perhaps simple enough for the victim to prove the aggregate losses, including the costs of psychiatric treatment and lost income, that stem from the ongoing traffic in her images as a whole. *(Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes.)* These losses may be called, for convenience's sake, a victim's "general losses." The difficulty is in determining the "full amount" of those general losses, if any, that are the proximate result of the offense conduct of a particular defendant who is one of thousands who have possessed and will in the future possess the victim's images but who has no other connection to the victim.

*Id.* (emphasis added).

Referencing a calculation used to divide a victim's total loss by the number of defendants ordered to pay restitution, defendant argues that "this Circuit should reject the 1/n method, as it violates the U.S. Supreme Court's directives in *Paroline*." (DB 20). He also argues that the district court abused its discretion in this case, both by relying on

the 1/n method and by not disaggregating the harm caused by the initial abuse of the victim.  (DB 24-27).  A court's consideration of the 1/n method does not violate *Paroline*, and the court did not abuse its discretion in ordering restitution to Pia.

### 1. *This Court should not reject the use of the 1/n method in determining the amount of restitution*

Defendant cites *United States v. Sainz*, 827 F.3d 602 (7th Cir. 2016), where the Seventh Circuit described the application of "the 1/n method" in that case:

> The government argued to the district court that Sainz should pay $8,387.43 in restitution, which is 1/136 of Cindy's total loss for the relevant time period.  The government divided the total loss by 136 because Sainz is the 136th offender who has been prosecuted and ordered to pay Cindy restitution.  This calculation is known as the 1/n method, where n represents the number of defendants who have paid the victim restitution plus 1 (to count the defendant being sentenced).  *See United States v. Gamble*, 709 F.3d 541, 554 (6th Cir. 2013) (approving a pre-*Paroline* restitution order using the 1/n method, calling the method a "pragmatic solution that district courts may use as a framework").

*Id.* at 605.

In *Sainz*, the defendant argued that "use of the 1/n method is contrary to the instruction in *Paroline* to award restitution that

34

comports with the individual defendant's relative role in causing the

harm." *Id.* at 606. The appeals court stated:

> We do not read *Paroline* as requiring district courts to
> consider in every case every factor mentioned. The Supreme
> Court made clear that the *Paroline* factors were permissive,
> not mandatory, and were provided as "rough guideposts"
> that "district courts might consider in determining a proper
> amount of restitution." The Court explained that "it is
> neither necessary nor appropriate to prescribe a precise
> algorithm for determining the proper restitution amount at
> this point in the law's development," adding: "These factors
> need not be converted into a rigid formula."
>
> Many of the factors discussed in *Paroline* refer to
> information that may not even be reliably known. For
> example, the government may not be able to produce
> evidence that would provide reasonable predictions about
> the number of offenders likely to be convicted in the future
> or the broader number of offenders who were involved but
> are unlikely to be caught. Such predictions might well be
> mere guesses. But the Supreme Court made clear in
> *Paroline* that the difficulty of coming up with reasonable
> estimates for an indeterminate number of other offenders
> should not be a barrier to all compensation for victims of
> child pornography.

*Id.* at 606-07 (quoting and citing *Paroline*, 134 S. Ct. at 1727-28)

(citations omitted).

In *Sainz*, while acknowledging the limitations of the "1/n method,"

the court upheld the district court's award of $8,400 to the victim:

> The district court here considered the available evidence,
> exercised its discretion, and arrived at a reasonable

35

restitution award.  The court did not err by not addressing every *Paroline* factor.  Sainz may be correct that the 1/n method is not appropriate for all cases because the restitution amount depends so heavily on the number of offenders previously sentenced.  Where n is very small or very large, a more nuanced method may be required.  But the application of that method to this case resulted in a reasonable restitution order of $8,400 for an offender who possessed six images of the victim and indisputably contributed to her harm.  That amount was not an abuse of discretion.

*Id.* at 607.

Defendant cites *United States v. Loreng*, 956 F. Supp. 2d 213 (D.D.C. 2013), including that court's statement that the method "varies hugely based on the point in time restitution is sought, awards arbitrarily more than total losses, and results in wildly different figures divorced from a defendant's culpability or his effect on the victim."  DB 23 (quoting *Loreng*, 956 F. Supp. 2d at 225).  In *Loreng*, the court awarded no restitution.  956 F. Supp. 2d at 230.  However, *Loreng* was decided before *Paroline*.

Defendant also cites *United States v. Gamble*, No. 1:10-CR-137, 2015 WL 4162924 (E.D. Tenn. 2015) (unpublished).  (DB 23).  In that case, the district court criticized the 1/n method, noting that the 500th defendant sentenced for possessing the victim's images would pay more

Appellate Case: 17-2395    Page: 44    Date Filed: 10/05/2017    Entry ID: 4586852  RESTRICTED

in restitution than the 1,000th defendant would pay. 2015 WL 4162924 at *2 n.1. It imposed its own five-tier system instead. *Id.* at *3.

In all of these cases, the courts recognized that the results of the 1/n method vary based on the number of defendants previously sentenced. Nevertheless, in *Sainz*, the court held that the district court did not abuse its discretion, finding that "the application of that method to this case resulted in a reasonable restitution order of $8,400 for an offender who possessed six images of the victim and indisputably contributed to her harm." *Sainz*, 827 F.3d at 607.

*Paroline* did not prohibit the use of the 1/n method. Indeed, the "n" includes "the number of past criminal defendants found to have contributed to the victim's general losses," which is a factor the Supreme Court specifically allowed district courts to consider. *Paroline*, 134 S. Ct. at 1728. This Court should reject defendant's argument that the use of the 1/n method violates the Supreme Court's directives in *Paroline*.

Appellate Case: 17-2395    Page: 45    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

### 2. The court did not abuse its discretion in using the 1/n method in this case

Defendant argues that the court abused its discretion in this case by using the 1/n method (DB 24-27).  The court considered both parties' arguments on this issue, and it did not abuse its discretion.

Defendant argues:

> Below, the district court did not discuss any of the *Paroline* factors.  The court, evidently, adopted the government's proposed number, based on a formula that did not require any consideration of Bordman's specific conduct.  This was improper.

(DB 20-21).[5]  He argues that, "[b]ecause the number in this case is relatively small in the context of child-pornography prosecutions, the district court abused its discretion by relying solely on the 1/n equation."  (DB 24-25).

Although defendant argues that the government's proposed restitution award was "based on a formula that did not require any consideration of Bordman's specific conduct," the government addressed multiple *Paroline* factors in a supplemental sentencing memorandum

---

[5] Defendant did not object to the district court's consideration of the *Paroline* factors at sentencing, and he does not raise a plain procedural error argument on appeal.  Rather, he argues that the court abused its discretion in using the 1/n method in this case.

and at the sentencing hearing.  (DCD 51; TR 22-24).  It presented the amount of the victim's losses as provided by her counsel.  (EX 1).  It provided a listing of federal cases in which restitution had been ordered to Pia, along with the amounts of restitution ordered.  (EX 3; TR 9-10).  It discussed defendant's citation of *Loreng* and the fact that, under the 1/n method, "the more people who ask for restitution, the smaller the number gets."  (TR 22).

The government acknowledged that it did not have "reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses" or "a reasonably reliable estimate of the broader number of offenders involved . . . ."  (DCD 51 at 13-14 (quoting *Paroline*, 134 S. Ct. at 1728)).[6]  It stated that it had no evidence defendant had distributed depictions of Pia and that defendant was not connected to the initial

---

[6] The government noted that, in her report, Dr. Hedrick wrote to Pia's attorney, "You have indicated to me that you have received notices regarding more than 500 perpetrators who are charged with crimes related to possession of Pia's sexual abuse images and those of [two other victims]."  (DCD 51 at 14; EX 1 at 36).

Appellate Case: 17-2395    Page: 47    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

production of these depictions.  (DCD 51 at 14; TR 23; *see* TR 21 (Investigator Bell's testimony)).[7]

In presenting evidence and arguing the restitution issue, the government focused on the videos defendant possessed.  Investigator Bell testified that defendant had two identical videos of Pia in two different folders in his Dropbox account.  (TR 17-19).  He testified that the filenames for these videos included a shortened form of the victim's actual name.  (TR 19 (referencing EX 2 at 6)).  The government noted that, although USSG §2G2.2 does not apply to a restitution determination, Application Note 6(B)(ii) provides that each child pornography video "shall be considered to have 75 images."  (DCD 51 at 14; TR 23).

The government emphasized the most aggravating factor supporting a higher restitution award:  the severe nature of the video that Investigator Bell described.  (TR 20, 23-24).

---

[7] While the government noted the absence of two aggravating factors in this case—the lack of evidence that defendant distributed depictions of Pia and the fact he was not involved with the production of these images—this does not support a reduction in the restitution amount.  Rather, the presence of either of these two factors would have supported an increase in the restitution amount.

Appellate Case: 17-2395    Page: 48    Date Filed: 10/05/2017    Entry ID: 4586852  RESTRICTED

In his response to the government's sentencing memorandum, defendant focused primarily on its criticism of the 1/n method. (DCD 52 at 2-4 (citing *Loreng*, 956 F. Supp. 2d 215, 224-25)). Referencing the psychologist's letter to Pia's attorney, defendant argued that 501 would be a better denominator to use in the 1/n formula. (DCD 52 at 4).[8] He also argued that he "did not distribute the images of Pia, he was not a part of the initial production of the images, and he possessed only two videos of Pia." (*Id.* at 4-5).

As noted above, in a different sentencing context, this Court has "held that where the district court heard argument from counsel about specific § 3553(a) factors, [it] may presume that the court considered those factors." *Keating*, 579 F.3d at 893. Here, the court read the arguments in both parties' briefs and gave them an opportunity to argue the *Paroline* factors at the sentencing hearing. (TR 21). After hearing the evidence and considering the arguments, the court found

---

[8] Even if one assumed that Pia (and not the other victims in the series) was a victim of more than 500 perpetrators, the use of this number as a denominator would rest on the assumption that all of these perpetrators (1) would be convicted and (2) would be ordered to pay restitution to Pia.

Appellate Case: 17-2395    Page: 49    Date Filed: 10/05/2017    Entry ID: 4586852 RESTRICTED

that the $3,000 amount requested by the government was appropriate in this case. (TR 24).

Because the parties addressed the *Paroline* factors in detail and the court considered these factors, defendant's argument that the government's proposed restitution award was "based on a formula that did not require any consideration of Bordman's specific conduct" (DB 20-21) and that the court "abused its discretion by relying solely on the 1/n equation" (DB 25) is not supported by the record.

### 3. *The court did not abuse its discretion in considering defendant's disaggregation argument*

Defendant contends that the "district court abused its discretion in ordering restitution because the government made no attempt to disaggregate the harm caused by Bordman's possession of the images from the original harm, specifically the original abuse of Pia." (DB 26). The report by Dr. Hedrick did not disaggregate the harm caused by the trafficking in Pia's depictions from the harm caused by Pia's original abuser. (EX 1 at 36-40). Therefore, as the government acknowledged, it had no evidence to present on this issue. (DCD 51 at 13; TR 22-23).

As defendant points out, two circuits have vacated restitution orders based on disaggregation arguments. (DB 26). In *United States*

Appellate Case: 17-2395    Page: 50    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

*v. Dunn*, 777 F.3d 1171 (10th Cir. 2015), the Tenth Circuit vacated and remanded for reconsideration of the restitution order, stating:

> We acknowledge that *Paroline* did not resolve this precise question. 134 S. Ct. at 1722 ("Complications may arise in disaggregating losses sustained as a result of the initial physical abuse, but those questions may be set aside for present purposes."). But the clear rationale of *Paroline* is that a defendant should be held accountable for the measure of losses that he individually has caused. We think it inconsistent with "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct" to hold Mr. Dunn accountable for those harms initially caused by Vicky's abuser. *Id.* at 1725.

*Id.* at 1181-82. In *United States v. Galan*, 804 F.3d 1287 (9th Cir. 2015), the Ninth Circuit followed the reasoning in *Dunn*, and it vacated and remanded for reconsideration of the restitution order. *Id.* at 1291.

In this case, the court considered the parties' arguments on this issue. In its supplemental sentencing memorandum, the government acknowledged that the amount of Pia's total loss, as provided by her attorney, "does not distinguish between the losses Pia 'sustained as a result of the initial physical abuse' and the losses that 'stem from the ongoing traffic in her images as a whole.'" (DCD 51 at 13 (quoting *Paroline*, 134 S. Ct. at 1722); TR 22-23). Defendant's response used similar language in making the same point. (DCD 52 at 4).

43

At the sentencing hearing, the government stated that the court could consider this issue and noted the court had the discretion to reduce the restitution amount. (TR 23). The government also pointed out that, even if a victim's original abuse was years in the past, the pornographic depictions of the victim will continue to be circulated on the Internet and made available to new offenders. (*Id.*).

The documents in support of the restitution request, including the victim impact statement and Dr. Hedrick's report, support this argument. In her victim impact statement, Pia's mother stated:

> My youngest child is reluctant to use the internet, even when she had a school assignment that required her to go on the internet to find information for a project! The internet is an instrument of her abuse. For her, it is a fearful thing, not a tool for knowledge. The knowledge that others have witnessed and even enjoyed her abuse is sickening to me, and intimidating to her.

(EX 1 at 12).

Even though Dr. Hedrick did not provide an opinion on the percentage of harm that was due to the victim's original sexual abuse, her report demonstrates the significant harm caused by the victim's fear of others seeing the pornographic depictions of her:

> Pia's mother has discussed with [Pia and the other victims] the fact that there is no way to eradicate these images and

44

that they will always be "out there".  One of the family
themes appears to be keeping information from others about
who they are while at the same time wondering who might
recognize them from images on the Internet.  There is a level
of suspiciousness and concern about exploitation that is
atypical for Pia's peers.  She appears to be dealing with
unwanted feelings about that and a sense of powerlessness
to change it by withdrawing from the world and adopting an
exceptionally passive stance.  This is likely to affect virtually
every aspect of her life as she matures, but most
importantly her ability to be academically and vocationally
productive as well as her ability to achieve satisfying
emotional relationships with others.

(EX 1 at 38).

Further, even if a certain dollar amount were subtracted to reflect

the harm caused by Pia's initial abuse, the egregious nature of the video

in this case supports an increase in the restitution amount.  Although

*Paroline* did not identify the nature of a victim's depictions as a

separate factor, it did instruct courts to consider "other facts relevant to

the defendant's relative causal role."  134 S. Ct. at 1728.

Other courts have considered the severity of the depictions in the

*Paroline* analysis.  In *United States v. Miltier*, No. 2:15-CR-151, 2016

WL 6821087 (E.D. Va. Nov. 17, 2016) (unpublished), the district court

considered the nature of the images under the category of "[o]ther

45

factors relevant to Defendant's causal role." *Id.* at *5-6. Citing two

other district courts, the court stated:

> This District and others have noted that the nature of the
> images—particularly whether they are sadistic, masochistic,
> or include other depictions of violence—is an appropriate
> factor to consider in determining restitution "because the
> victims will suffer more severe trauma from the continued
> trafficking of extremely graphic/sadistic images than they
> would from the trafficking of other images."

*Id.* at *6 (quoting *United States v. McIntosh*, No. 4:14-CR-28,

2014 WL 5422215 at *1 (E.D. Va. Oct. 22, 2014) (unpublished), in turn

quoting *United States v. Reynolds*, No. 12-20843, 2014 WL 4187936 at

*7 (E.D. Mich. Aug. 22, 2014)); *see United States v. Reynolds*, 626 F.

App'x 610, 620 (6th Cir. 2005) (unpublished) (upholding restitution

award where district court "adjusted upwards on the basis of the

number of images that Reynolds possessed and the graphic and sadistic

nature of those images"); *see also Gamble*, 2015 WL 4162924 at *3 ("A

defendant who possessed a large library of particularly sadistic images

from a victim with outsized losses who solicited those images from the

original producer would likely be placed in Tier I and be expected to be

held responsible for restitution in excess of $5,000."); *but see United*

*States v. Dileo*, 58 F. Supp. 3d 239, 247 n.4 (E.D.N.Y. 2014) (". . . all

46

depictions of child pornography, by their very nature, are
extraordinarily sadistic, which is why their continuing distribution
causes great harm, and accompanying losses, to their victims. Any
attempt to compare these depictions would necessarily become
arbitrary. The sadistic nature of the images must be captured in the
base computation rather than a sometimes-present aggravating
circumstance.").

In this case, defendant's possession of two identical videos, with
filenames bearing a shortened form of the victim's name, and depicting
particularly degrading conduct toward the victim, is a "fact relevant to
the defendant's relative causal role." The aggravating nature of this
video counterbalances any reduction that could be appropriate based on
the original abuse of the victim.

### 4. The court's restitution award of $3,000 is consistent with this Court's past decisions in child pornography restitution cases

In *United States v. Beckmann*, 786 F.3d 672 (8th Cir. 2015), this
Court held the district court did not abuse its discretion in deciding to
award restitution to each of three victims and that it did not clearly err
in ordering restitution of $3,000 to each victim. *Id.* at 681-83. The

47

defendant possessed 14 videos and 2 images of one victim, 3 images of a second victim, and 10 images of a third victim. *Id.* at 677. The government offered a computation for each of the three victims yielding restitution amounts of $675, $1,600, and $2,400. *Id.* The government "requested $3,000 of restitution per victim based on the mean amount of restitution ordered in the recent Supreme Court case of *United States v. Paroline* and citing two other district court opinions." *Id.* The defendant argued that the government had not shown the causal link required by *Paroline*; he argued that, even if this were shown, the appropriate amount of restitution would be $200 to $300. *Id.* The district court ordered $3,000 of restitution per victim. *Id.*

In upholding the district court's restitution orders, this Court stated:

> Beckmann, like Paroline, possessed and did not produce or distribute child pornography. As the Supreme Court stated, mere possessors are still liable for restitution because their actions proximately cause harm to the victim(s). Thus, the district court appropriately found that the government met its burden to prove proximate causation. The district court next found that the government met its burden to prove an appropriate and reasonable amount of restitution based on the victim impact statements, the restitution ordered in prior cases, the number of potential defendants involved, and Beckmann's relative culpability. The district court cited the appropriate law, considered appropriate factors, and

48

ultimately ordered restitution in the amount of $3,000 per victim, which is an amount consistent with the awards in similar possession cases since *Paroline*. Therefore, we cannot conclude that the district court erred in ordering restitution of $9,000, with $3,000 awarded to each victim.

*Id.* at 683 (footnotes omitted).

In *Evans*, this Court found the district court did not abuse its discretion in ordering the defendant to pay $3,250 in restitution to a victim. 802 F.3d at 949-50. The defendant possessed "20 videos and a handful of images" of the victim. *Id.* at 949. The government requested $5,000 in restitution, and the defendant argued that $600 would be an appropriate amount. *Id.* This Court stated:

> The district court in this case considered the *Paroline* factors in arriving at the restitution award, including the harm experienced by Vicky, the range of awards granted in prior cases, the number of videos and images of Vicky possessed by Evans, the number of people already convicted of possessing images of Vicky, the difficulty of assessing the number of future possessors of images of Vicky, and Evans's relative culpability. The district court applied appropriate law, considered appropriate factors, and set a restitution award it believed to be reasonable on the facts of this case. Given the ample discretion granted to district courts in setting restitution awards for victims of child pornography following *Paroline*, we cannot conclude that the district court abused that discretion in this case. *See United States v. Beckmann*, 786 F.3d 672, 683 (8th Cir. 2015).

*Id.* at 950 (footnote omitted).

Appellate Case: 17-2395   Page: 57   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

In *Funke*, this Court held that the district court properly considered future losses as "costs incurred" under 18 U.S.C. § 2259. 846 F.3d at 1000-01. This Court also held that the court did not abuse its discretion in ordering the defendant to pay $3,500 in restitution to the victim. *Id.* at 1002. This Court stated:

> The district court properly applied the *Paroline* factors, considering Funke's "possession of a large number of files involving [Vicky] and his role in distributing files to others over the BitTorrent program." The court did not abuse its discretion in awarding $3,500 in restitution.

*Id.* (citing *Evans*, 802 F.23d at 949-50; *Beckmann*, 786 F.3d at 682).

In *United States v. Knapp*, --- F. App'x ----, No. 16-3559, 2017 WL 2533390 (8th Cir. June 12, 2017) (unpublished), the defendant challenged the district court's order of equal amounts of restitution to two victims with different total losses. He argued:

> "Sarah" claimed a full amount of economic loss in the amount of $2,752,089.71; while "Violet" claimed a full amount of economic loss in the amount of $120,154.76—less than one-twentieth of the amount of losses that Sarah claimed. Yet the court granted them each the same amount: $2,500 in restitution. . . . Given the disparity in the harm caused to each, an analysis of the significance of Knapp's conduct in the victims' losses should not result in the same amount of restitution, absent other striking differences not found here.

*Id.* at *3. This Court rejected the defendant's argument:

50

This argument ignores the fact that there have been 315 restitution orders entered in favor of Sarah, while Violet has only received three, as she only recently began seeking restitution. We recognize that, despite Sarah's recovery to date, the outstanding economic losses for these two victims remain unequal. However, Paroline makes clear that we do not demand a "a precise mathematical inquiry" or perfect balancing between victims. *Id.* As such, "[g]iven the ample discretion granted to district courts in setting restitution awards for victims of child pornography following *Paroline*," we conclude that the district court did not abuse its discretion in ordering $11,000 in restitution for the four victims proximately harmed by Knapp's possession and distribution of child pornography. *See Evans*, 802 F.3d at 950.

*Id.*

In this case, defendant argues that the $3,000 restitution award is greater than the $2,887.75 amount resulting from the 1/n method. (DB 25). However, this difference is much smaller than the difference between the $675, $1,600, and $2,400 computations in *Beckmann* and the $3,000 awards for each of the three victims in that case. Further, the restitution award in this case is similar to the awards in *Beckmann*, *Evans*, *Funke*, and *Knapp*. The district court did not abuse its discretion in ordering defendant to pay $3,000 in restitution to Pia.

51

## III. The District Court Did Not Err in Imposing Conditions of Supervised Release Relating to Defendant's Use of Pornography and Erotica

Defendant contends that the district court erred in imposing two conditions of supervised release involving his use of pornography and erotica. These conditions were reasonably related to the factors under 18 U.S.C. § 3553(a), and the court did not err in imposing them.

### A. Standard of Review

"'A sentencing judge is afforded wide discretion when imposing terms of supervised release, and we review a decision to impose special terms of supervised release for abuse of that discretion.'" *United States v. Hobbs*, 845 F.3d 365, 367 (8th Cir. 2016) (quoting *United States v. Crume*, 422 F.3d 728, 732 (8th Cir. 2005)). "The sentencing court's wide discretion notwithstanding, 'we are particularly reluctant to uphold sweeping restrictions on important constitutional rights.'" *Id.* at 368 (quoting *Crume*, 422 F.3d at 733).[9]

---

[9] In *Hobbs*, this Court stated that a de novo standard may apply:

Because of the important constitutional interest at stake, Hobbs urges de novo review, citing *United States v. Kelly*, 625 F.3d 516, 520 (8th Cir. 2010). *Kelly* states that we review the constitutionality of a supervised-release condition de novo. *Id.* Some cases have cited *Kelly* for this point. *See,*

Appellate Case: 17-2395   Page: 60   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

**B.    The Special Conditions Involving Pornography and
Erotica Were Reasonably Related to the Factors Under
18 U.S.C. § 3553(a)**

Defendant argues that the district court erred in imposing special

conditions of supervised release prohibiting (1) his use of photographic

equipment, a computer, or any electronic storage device to view or

produce pornography or erotica; and (2) his possession of pornography,

his use of pornography or erotica, or his entering any establishment

where pornography or erotica can be obtained or viewed.  (DB 28-36).

These special conditions were appropriate in this case.

In *United States v. Muhlenbruch*, 682 F.3d 1096 (8th Cir. 2012),

this Court stated:

> District courts have "wide discretion" to impose conditions of
> supervised release so long as they are "reasonably related" to
> (1) the nature and circumstances of the offense; (2) the
> defendant's history and characteristics; (3) the deterrence of
> criminal conduct; (4) the protection of the public from further
> crimes of the defendant; and (5) the defendant's educational,
> vocational, medicinal, or other correctional needs.

> *e.g.*, *United States v. Schaefer*, 675 F.3d 1122, 1125 (8th Cir.
> 2012).  Other cases, though, have addressed sweeping
> restrictions under the abuse-of-discretion standard.  *See,
> e.g.*, *Crume*, 422 F.3d at 732-33.  Because the condition here
> is an abuse of discretion, we do not decide whether the
> stricter de novo standard might apply.

*Id.*

53

*Id.* at 1102 (quoting *United States v. Richart*, 662 F.3d 1037, 1056 (8th Cir. 2011)).  "In addition, the conditions must not involve a 'greater deprivation of liberty than is reasonably necessary' to achieve such purposes, and must be consistent with the Sentencing Commission's policy statements."  *Id.* at 1102-03 (quoting *Richart*, 662 F.3d at 1056); 18 U.S.C. § 3583(d).

"'In fashioning a special condition of supervised release, a court must make an individualized inquiry into the facts and circumstances underlying a case and make sufficient findings on the record so as to ensure that the special condition satisfies the statutory requirements.'" *United States v. Schaefer*, 675 F.3d 1122, 1124 (8th Cir. 2012) (quoting *United States v. Springston*, 650 F.3d 1153, 1156 (8th Cir. 2011), *vacated and remanded on other grounds*, 132 S. Ct. 1905 (2012)).  "A special condition need not be related to all the factors; the factors are to be weighed independently."  *Id.* (quoting *Springston*, 650 F.3d at 1155-56).

Defendant argues that the conditions "are vague because the terms 'pornographic material,' pornography, and erotica do not provide the required specificity."  (DB 30).  He also argues that "two conditions

Appellate Case: 17-2395    Page: 62    Date Filed: 10/05/2017    Entry ID: 4586852  RESTRICTED

are overly broad for the same reason: the terms 'pornographic material,' pornography, and erotica are overly broad." (DB 33). These arguments fail under this Court's case law.

In *United States v. Schultz*, 845 F.3d 879 (8th Cir. 2017), after the district court revoked a SORNA defendant's supervised release, he appealed the reimposition of a condition prohibiting him "'from owning or having in his possession any pornographic materials' or from 'enter[ing] any establishment where pornography or erotica can be obtained or viewed.'" *Id.* at 881. The defendant argued that "the provisions are overbroad and vague, such that he has no clear notice as to what he can view or what businesses he can enter without violating his supervised release." *Id.* at 881-82.

This Court held that the district court did not plainly err in reimposing the condition. *Id.* at 882. It stated, "As we have previously held, 'the need to protect children from future exploitation' justifies banning a defendant 'from possessing any pornography.'" *Id.* (quoting *United States v. Mefford*, 711 F.3d 923, 927 (8th Cir. 2013), in turn citing *United States v. Ristine*, 335 F.3d 692, 694-95 (8th Cir. 2003)). *See Muhlenbruch*, 682 F.3d at 1105 (finding district court did not abuse

Appellate Case: 17-2395    Page: 63    Date Filed: 10/05/2017    Entry ID: 4586852    RESTRICTED

its discretion in imposing pornography restrictions for defendant who received and possessed child pornography; citing *United States v. Wiedower*, 634 F.3d 490, 496 (8th Cir. 2011); *Ristine*, 335 F.3d at 694).

In this case, it was appropriate for the Court to impose the special conditions. Defendant sexually exploited the victim, distributed to others the child pornography he produced, and traded child pornography with others. Further, defendant repeatedly expressed his sexual interest in children. Based on an individualized inquiry into the facts and circumstances of the case, the district court properly found that the special conditions were reasonably related to the factors under 18 U.S.C. § 3553(a).

Appellate Case: 17-2395    Page: 64    Date Filed: 10/05/2017    Entry ID: 4586852 RESTRICTED

# CONCLUSION

For the above reasons, defendant's sentence should be affirmed.

Respectfully submitted,

PETER E. DEEGAN, JR.
United States Attorney

By: s/ Mark Tremmel

MARK TREMMEL
Assistant United States Attorney
111 Seventh Avenue SE, Box 1
Cedar Rapids, Iowa 52401-2101
(319) 363-6333
(319) 363-1990 (Fax)
Mark.Tremmel@usdoj.gov

Appellate Case: 17-2395   Page: 65   Date Filed: 10/05/2017   Entry ID: 4586852   RESTRICTED

## CERTIFICATE OF FILING AND SERVICE

I certify that, on October 5, 2017, I electronically filed the foregoing brief with the Clerk for the Eighth Circuit Court of Appeals by using the CM/ECF system. The electronic brief and the addendum attached to the brief, if any, have been scanned for viruses using McAfee and the scan showed no virus.

I further certify that, on _____, 2017, I submitted ten paper copies of the brief to the Clerk of Court and one paper copy to each party separately represented or proceeding pro se.

PETER E. DEEGAN, JR.
United States Attorney

By: */s/ Linda Mersch*

_____
Legal Assistant

Copies to:
Heather Quick
Federal Public Defender's Office
222 Third Avenue SE
Cedar Rapids, IA 52401

Appellate Case: 17-2395    Page: 66    Date Filed: 10/05/2017    Entry ID: 4586852 RESTRICTED

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

I certify that the foregoing brief complies with the type-volume limit of Fed R. App. P. 32(a)(7)(B). The brief uses a proportional-spaced typeface, fourteen-point Century Schoolbook font. Based on a count under Microsoft Word Version 2016 for Windows, the brief contains 11,848 words, excluding the parts of the brief exempted by Fed R. App. P. 32(f).

PETER E. DEEGAN, JR.
United States Attorney

By: /s/ Mark Tremmel

Mark Tremmel
Assistant United States Attorney

Appellate Case: 17-2395   Page: 67   Date Filed: 10/05/2017   Entry ID: 4586852 RESTRICTED