UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Appellee,<br><br>v.<br><br>MICHAEL BORDMAN,<br><br>Appellant. | APPEAL NO. 17-2395<br><br><br><br>APPELLANT'S PETITION FOR REHEARING AND REHEARING EN BANC |

**TABLE OF CONTENTS**

RULE 35(b)(1) STATEMENT ................................................................................2

PROCEDURAL AND FACTUAL HISTORY ........................................................3

ARGUMENT ..........................................................................................................6

    I.    THE PANEL'S DECISION ON RESTITUTION CONFLICTS WITH THE MAJORITY OF OTHER COURTS AND IS INCONSISTENT WITH *PAROLINE*................................................................................6

    II.    THE SPECIAL CONDITIONS OF SUPERVISED RELEASE ON PORNOGRAPHY AND EROTICA ARE VAGUE AND OVERBROAD ................................................................................10

CONCLUSION & REQUEST FOR HEARING EN BANC ................................16

CERTIFICATE OF SERVICE .............................................................................16

Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION...........17

Michael Bordman (hereinafter "Bordman"), through counsel, respectfully petitions pursuant to Fed. R. App. P. 35, and 8th Cir. Rule 35A, for rehearing and rehearing en banc of the July 17, 2018, decision of this Court affirming the defendant's sentence in *United States v. Bordman*, No. 17-2395, slip op. (8th Cir. July 17, 2018).

## RULE 35(b)(1) STATEMENT

This Court should grant the petition for rehearing and/or rehearing en banc, as the panel's decision conflicts with other courts in multiple respects. First, despite stating otherwise, this Court's decision sanctions the 1/n method for determining restitution in child pornography cases. The majority of courts have rejected this method, finding it inconsistent with *Paroline v. United States*, 134 S. Ct. 1710 (2014). Only the Seventh Circuit has upheld the use of this method.

The panel also held that district courts are not required to disaggregate the harm caused by the possession or distribution of child pornography from the harm caused by the initial abuse when determining the total loss amount. While *Paroline* left this question open, the Ninth and Tenth Circuits have both held disaggregation is required. The Court should grant rehearing to adopt the reasoning of the Ninth and Tenth Circuits.

Finally, the panel held that "pornography" and "erotica" are not vague and overbroad terms, and therefore Bordman's challenged special conditions of supervised release were proper. This Court has repeatedly noted that these terms are difficult to define. The Circuit should grant rehearing and strike down the special conditions of supervised release, in line with other courts who have reversed similar conditions of supervised release.

## PROCEDURAL AND FACTUAL HISTORY

Bordman pled guilty to one count of sexual exploitation of a child, in violation of 18 U.S.C. §§ 2251(a) & (3), and one count of possession of child pornography, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2). (DCD 32). In preparation for sentencing, a presentence investigation report (PSR) was created.

The PSR recommended two similar conditions of supervised release:

> The defendant must not operate or use photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica. (PSR ¶ 80).

> The defendant must not own or possess any pornographic materials. The defendant must not use any form of pornography or erotica nor enter any establishment where pornography or erotica can be obtained or viewed. (PSR ¶ 81).

Bordman objected to the two above special conditions of supervised release, arguing the conditions were vague and overbroad. (DCD 37).

3

The government requested $3,000 in restitution on behalf of one of the victims, "Pia." (DCD 51). Pia's total losses were $95,295.71. (DCD 51 p. 13). The government proposed dividing the total loss amount by thirty-three. Thirty-three represented the number of defendants—including Bordman—who, by the time of Bordman's sentencing, had been ordered to pay restitution. (DCD 51 p. 13; Sent. Tr. p, 10). This came out to $2,887.75, and the government rounded up to $3,000. (Sent. Tr. p. 10). The government acknowledged that this calculation did not require consideration of all of the factors in *Paroline v. United States*, 134 S. Ct. 1710 (2014). (DCD 51 p. 13). The government also conceded its approach "does not distinguish between the losses Pia sustained as a result of the initial physical abuse and the losses that stem from the ongoing traffic in her images as a whole." (DCD 51, p. 13). Bordman objected to the amount requested. (DCD 52). Bordman argued the government's formula did not comply with *Paroline*. (DCD 52).

After hearing argument on the appropriate restitution amount, the district court granted the government's request for $3,000. (Sent. Tr. p. 24). The extent of the district court's ruling is as follows:

> The Court is ready to rule by a preponderance of the evidence, after considering the arguments made by counsel, and they have briefed the cases that we have. And it's difficult to call, but I believe, and I do find,

Appellate Case: 17-2395     Page: 4     Date Filed: 07/31/2018 Entry ID: 4688416

> that restitution in the amount of $3,000 to Pia is appropriate, and that
> will be an award that I make at time of imposition of sentence.

(Sent. Tr. p. 24). The Court also overruled the objections to the special conditions of supervised release. (Sent. Tr. p. 31).

Bordman appealed and maintained his challenges to the restitution award and to the special conditions of supervised release. As to the restitution award, Bordman argued that the restitution amount was determined under the 1/n method, which the majority of courts have rejected. Further, he noted that the prosecutor failed to disaggregate the harm caused by the initial abuse from the harm caused by Bordman's possession. As to the special conditions, Bordman maintained that they were vague and overbroad.

This Court affirmed. First, the panel held that it "need not determine in this case if a district court may *solely* rely on the 1/n formula and forego the other *Paroline* factors because the district court relied on additional factors." Slip op. at 13. To support that the district court relied on other factors, the panel pointed to the government's general discussion of the remaining *Paroline* factors. *Id*. The panel also held that the district court is not required to disaggregate the harm caused by the initial abuse from the harm caused by the later possession, rejecting the holdings of the Ninth and Tenth Circuits. *Id.*

5

The panel also rejected Bordman's challenges to his supervised release conditions. The panel noted that Bordman's overbreadth and vagueness challenges were foreclosed by this Court's precedent. *Id*. at 17-21.

## ARGUMENT

I. **THE PANEL'S DECISION ON RESTITUTION CONFLICTS WITH THE MAJORITY OF OTHER COURTS AND IS INCONSISTENT WITH *PAROLINE*.**

**A. This Circuit has sanctioned the 1/n method for determining the restitution amount. The use of a mathematical formula is inconsistent with *Paroline*, as the majority of courts recognize.**

In *Paroline*, the Supreme Court determined the "proper causation inquiry for purposes of determining the entitlement to and amount of restitution . . . ." 134 S. Ct. 1710, 1718 (2014). In child pornography cases, restitution is proper "only to the extent the defendant's offense proximately caused the victim's losses." *Id.* at 1722.

Of course, the question then becomes how to determine the harm that was "proximately caused" by the defendant's conduct, and therefore the proper amount of restitution in a specific case. The Court listed several factors to consider when determining the proper amount of restitution:

> the number of past criminal defendants found to have contributed to the victim's general losses; reasonable predictions of the number of future offenders likely to be caught and convicted for crimes contributing to the victim's general losses; any available and reasonably reliable

6

> estimate of the broader number of offenders involved (most of whom will, of course, never be caught or convicted); whether the defendant reproduced or distributed images of the victim; whether the defendant had any connection to the initial production of the images; how many images of the victim the defendant possessed; and other facts relevant to the defendant's relative causal role.

*Id.* at 1728. The Court cautioned against converting these factors into a "rigid formula, especially if doing so would result in trivial restitution orders." *Id.* at 1728.

Despite this clear directive, prosecutors have pushed the "1/n method" to determine the proper restitution amount. The 1/n method is "where n represents the number of defendants who have paid the victim restitution plus 1 (to count the defendant being sentenced)." *See, e.g., United States v. Sainz,* 827 F.3d 602, 605 (7th Cir. 2016). A defendant is ordered to pay "1/n" of the appropriate loss amount. Only one court, the Seventh Circuit, has upheld the 1/n method. *Id.* However, even the Seventh Circuit noted it might not be appropriate in all circumstances. *Id.* at 606-07.

The majority of other courts have rejected this approach for a number of reasons. First, the number of defendants provided, or "n," is not always correct. *United States v. Loreng,* 956 F. Supp. 2d 213, 220-21 (D.D.C. 2013). Further, the 1/n method results in a random award that does not take into account a defendant's conduct. *See Loreng*, 956 F. Supp. 2d at 223 (calling this approach "arbitrary"). As one district court noted,

7

> Consider Defendant A and Defendant B, both of whom possessed the identical ten pictures of a Victim and were equivalent in all respects except the date of sentencing. Assume that Victim's total losses are $1,000,000. Assume also that Defendant A is the 500th defendant sentenced for possessing victim's images and that Defendant B is the 1,000th defendant. Under [the 1/n method], the starting value for Defendant A would be $2000 while for Defendant B it would be $1,000.

*United States v. Gamble*, 2015 WL 4162924, at *2 n.1 (E.D. Tenn. 2015); *see also Loreng*, 956 F. Supp. 2d at 225.

Despite the panel's contention otherwise, this Circuit has sanctioned the 1/n method for prosecutors. According to the panel, it was sufficient that the prosecutor listed out other *Paroline* factors to establish that a mathematical formula was not used. However, notably, the prosecutor did not move the award down for any of the mitigating factors—including that Bordman was not involved in the initial abuse and that he only possessed two videos. However, the prosecutor "rounded up" for the aggravating factors. Some "rounding" or minor alterations to the restitution amount does not mean the 1/n method was not used. *See, e.g., United States v. Sills*, 712 F. App'x 581 (7th Cir. 2018) (acknowledging the district court used the 1/n method, even when the district court rounded down because the defendant was not involved in the initial abuse and only possessed one image).

8

More importantly, the district court did not discuss the *Paroline* factors whatsoever when ordering restitution, or otherwise alter the award based on the factors. *See United States v. Jimenez*, 692 F. App'x 192 (5th Cir. 2017) (rejecting claim that district court followed *Paroline* because *Paroline* factors were discussed in government exhibits). Therefore, if this opinion stands, prosecutors will know that they can use the 1/n method to determine the restitution amount, so long as they simply list out the other factors (even if these factors do not alter the award one way or another).

### B. The panel's holding that disaggregation is not required conflicts with the Ninth And Tenth Circuits.

The panel found no fault in the government's failure to disaggregate the harm caused by Bordman's possession from the harm caused by the initial abuse. This holding conflicts with several other circuits that have held that disaggregation is required under *Paroline*. *See United States v. Galan,* 804 F.3d 1287, 1290-91 (9th Cir. 2015); *United States v. Dunn*, 777 F.3d 1171, 1181-82 (10th Cir. 2015); *see also United States v. Rogers,* 758 F.3d 37 (1st Cir. 2014); *Loreng*, 956 F. Supp. 2d. at 223 (noting that the government's approach was flawed because "it begins with the total amount of [the victim's] losses, instead of the portion of [the victim's] losses caused by continued viewing of the images"). As the Tenth Circuit has stated:

9

> [T]he clear rationale of *Paroline* is that a defendant should be held accountable for the measures of losses that *he individually* has caused. We think it inconsistent with "the bedrock principle that restitution should reflect the consequences of the defendant's own conduct" to hold [the defendant] accountable for those harms initially caused by [the victim's] abuser.

*Dunn*, 777 F.3d at 1181. The Ninth Circuit also noted the need for separation between the two harms:

> If an original abuser had stayed in his own clandestine and sick little world, a terrible trauma would have been inflicted upon the victim, and the abuser would have to atone for all the consequences of that wrongdoing. When distribution of images is added, an original abuser (or another person) would commit and put in motion a whole different set of abuses. Those who later participate in distribution or possession, especially at a more remote time, are part of a distribution crime, but not of the physical-abuse crime.

*Galan,* 804 F.3d at 1290.

The panel here rejected the reasoning of these other circuits. Because the panel's decision is inconsistent with *Paroline*, this Court should grant the petition for rehearing and adopt the reasoning of its sister circuits.

## II. THE SPECIAL CONDITIONS OF SUPERVISED RELEASE ON PORNOGRAPHY AND EROTICA ARE VAGUE AND OVERBROAD.

The panel upheld two special conditions of supervised release that violate Bordman's First Amendment rights. The special conditions are as follows:

10

> Special Condition 2: The defendant must not operate or use photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica. (PSR ¶ 80).
>
> Special Condition 3: The defendant must not own or possess any pornographic materials. The defendant must not use any form of pornography or erotica nor enter any establishment where pornography or erotica can be obtained or viewed. (PSR ¶ 81).

These conditions are both vague and overly broad.

### A. "Pornography" and "erotica" are vague.

Courts, including this Circuit, have struggled to define pornography. *United States v. Thompson,* 653 F.3d 688, 695 (8th Cir. 2011). Because of the inability to define "pornography," other courts have consistently found special conditions of supervised release that ban possession or use of pornography vague. *United States v. Guagliardo,* 278 F.3d 868, 872 (9th Cir.2002); *United States v. Loy,* 237 F.3d 251, 263–65 (3d Cir.2001); *State v. Bahl,* 193 P.3d 678, 686 (Wash. 2008). Because pornography is subject to differing interpretations, these special conditions fail to provide adequate notice as to what is prohibited. *Id.* Further, what materials are "pornographic" is based on a subjective determination, creating "a real danger that the prohibition on pornography may ultimately translate to a prohibition on whatever the officer personally finds titillating." *Loy*, 237 F.3d at 258; *see also Farrell v. Burke,* 449 F.3d 470, 486–87 (2d Cir. 2006)

11

("[D]etermining whether material deserves the label of pornography is a subjective, standardless process, heavily influenced by the individual, social and cultural experience of the person making the determination."). This Court should grant the petition for rehearing en banc to adopt the reasoning of these other courts that have struck down similar conditions of supervised release.

This case is an appropriate vehicle for en banc review of the issue, because unlike other special conditions challenged before this Court, Bordman's conditions do not include a "modifier" that removes vagueness concerns. *Thompson*, 653 F.3d at 696 (barring "pornography which includes any sexually explicit materials," and "sexually explicit" was defined by statute); *United States v. Mefford*, 711 F.3d 932 (8th Cir. 2013) (same). Instead, in both special conditions, pornography either is the sole term or combined with the term "erotica," which suffers from the same vagueness issues as pornography.[1] This Court has not defined the term "erotica." The dictionary defines "erotica" as "literary or artistic works having an erotic theme or quality." https://www.merriam-webster.com/dictionary /erotica. Something is "erotic" if it is "devoted to, or tending to arouse sexual love or desire." https://www.merriam-webster.com/dictionary/erotic. Like "pornography,"

---

[1] The special conditions in *Mefford* also included the word "erotica," but it does not appear that the defendant challenged or raised this as part of the argument.

12

"erotica" is vague and subject to a probation officer's own subjective ideas of what is "erotic."

Analyzing each special condition specifically, it is clear the conditions are vague. Special condition 2 prohibits using "photographic equipment, a computer, or any electronic storage device to view or produce any form of pornography or erotica." Because the terms "pornography" and "erotica" are vague, it is unclear what this could prohibit. For example, arguably Bordman is in violation if he reads "Fifty Shades of Grey" on a Kindle or eReader device. A probation officer might believe he is viewing erotica if he watches an advertisement for "male enhancement" products on his computer. *United States v. Lantz*, 443 F. App'x 135, 141 (6th Cir. 2011).

Special condition 3 prohibits possessing pornographic material, using any form of pornography or erotica, or entering an establishment where pornography or erotica can be obtained or viewed. Like with special condition 2, it is also unclear what this prohibits. Would a picture of Michelangelo's sculpture, David, be considered "pornographic material"? A probation officer has interpreted it to be so. *Guagliardo*, 278 F.3d at 872. Could Bordman not enter a record store that sells Marvin Gaye albums because this is "erotica"?

13

Based on the above, this Court should grant rehearing and strike down Bordman's conditions of supervised release as impermissibly vague.

## B. "Pornography" and "erotica" are overly broad.

This Court should grant the petition for rehearing en banc to hold that the challenged special conditions of supervised release are overly broad. Special conditions of supervised release that ban possession of pornography or pornographic materials have a wide sweep:

> Unlike instances of obscenity, we could easily set forth numerous examples of books and films containing sexually explicit material that we could not absolutely say are (or are not) pornographic. One such example, as discussed below, might be Playboy, which features nudity but not sexual conduct. It is also difficult to gauge on which side of the line the film adaptations of Vladimir Nabokov's Lolita would fall, or if Edouard Manet's Le Dejeuner sur L'Herbe is pornographic (or even some of the Calvin Klein advertisements), and we certainly cannot know whether the pornography condition is restricted only to visual materials, or whether it encompasses pure text and sound recordings. In *Farrell v. Burke*, . . . 1998 WL 751695 (S.D.N.Y. Oct.28, 1998), the district court described a situation in which a parole condition prohibiting "pornography" was interpreted by a parole officer to apply equally to Playboy and to photographs of Michelangelo's David. Similarly, the Court of Appeals for the Seventh Circuit, examining the scope of a statutory definition of pornography, observed that it could encompass everything "from hard-core films to W.B. Yeats's poem 'Leda and the Swan.'" *American Booksellers Ass'n v. Hudnut*, 771 F.2d 323, 327 (7th Cir.1985).

14

*Loy*, 237 F.3d at 264. Much mainstream art, advertisement, music, prose, and film could arguably be considered "pornography." Banning such a wide variety of materials would not support the familiar goals of sentencing.

The special conditions here are also overbroad because they prohibit use, possession, or entering an establishment that sells, erotica. As discussed above, "erotica" could include books, songs, or pictures that are not pornographic or even sexually stimulating in nature. Erotica could be love songs, a TV commercial, or popular non-fiction books.

Special condition 3 could ban the possession of love songs or a copy of the latest Sears catalog. It could be enforced to prohibit Bordman from entering any record store, book store, public library or even a grocery store. *Adkins*, 743 F.3d at 194 (reasoning that under similar ban a defendant "might not be able to ride the bus, enter a grocery store, watch television, open a magazine or a newspaper, read a classic like Romeo and Juliet, or even go out in public (given the ubiquity of advertisements that use potentially sexually oriented or sexually stimulating images to pique consumer interests»."). If a gas station sells "Maxim" magazine, Bordman will not be able to go inside.

This Court should grant the petition for rehearing en banc and adopt the reasoning of other courts to find that Bordman's conditions are overly broad.

15

## CONCLUSION AND REQUEST FOR REHEARING EN BANC

Bordman respectfully requests that the July 17, 2018, opinion be withdrawn, that the Court grant rehearing and/or rehearing en banc.

Respectfully submitted,

*/s/ Heather Quick*
Heather Quick, Asst. Federal Defender
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
PHONE: (319) 363-9540
FAX: (319) 363-9542

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2018, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system. I further certify that a copy of the foregoing will be sent to Vernon Webster at his address of record via U.S. Mail.

*/s/ Kelly Jensen,* Legal Assistant

**Fed. R. App. P. 32(a)(7) AND 8th CIR. RULE 28A(c) CERTIFICATION**

I certify that the foregoing brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7). The brief uses a proportional space, 14 point New Times Roman font. Based on a line count under Microsoft Word Version 14.0.7159.5000, the brief contains 321 lines and 3,264 words, excluding the table of contents, table of authorities, any addendum, and certificates of counsel.

Respectfully submitted,

*/s/ Heather Quick*
Heather Quick, Asst. Federal Defender
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
PHONE: (319) 363-9540
FAX: (319) 363-9542